[Crim. No. 3988. First Dist., Div. One. Feb. 1, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. HARVEY
SEARCY, Defendant and Appellant.

741

Bernard Robert Cohn, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and John L. Burton, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant appeals from judgment of conviction after jury verdict, of violation of section 470, Penal Code (forgery).[1]

### QUESTIONS PRESENTED

1. Sufficiency of the information.
2. Can a credit charge slip be the subject of forgery?
3. Was there an illegal search and seizure?
4. Alleged error in excluding a hearsay conversation between defendant and a deputy sheriff.
5. Alleged failure of sheriff to subpoena a sheriff's detective.

### EVIDENCE

Tidewater Oil Co. and Standard Oil Co. issued credit cards to John J. Hennessy. The latter gave a duplicate of each to his daughter, Nancy. Nancy's purse containing these cards was stolen.

Without detailing the evidence, it clearly shows that defendant used these cards to obtain gasoline and tires at various service stations. The procedure at each station was for the attendant, after supplying the gasoline or tires, to make out a credit slip, upon which was noted the license number of the automobile serviced. Defendant then signed such slip. Defendant used his own car and borrowed cars. All of them had stolen license plates instead of their own plates. Defendant admitted signing the credit slips. He testified that he had performed some TV repair services for a man named "Johnny" and was allowed the use of credit cards in payment thereof.

1. *Sufficiency of the Information.*

The portion of section 470 applicable here reads: "Every person who, with intent to defraud, signs the name of another person . . . knowing that he has no authority so to do, to . . . any . . . *writing obligatory . . . contract . . . due-bill for the payment of money* . . . or other contract for money . . . is guilty of forgery." (Emphasis added.)

The amended information charged defendant with violation of section 470 "in that . . . the said defendant, with intent to defraud, did forge the name of another person to a writing obligatory, to wit, a Tidewater Oil Co. charge slip, knowing that he had no authority so to do."

Defendant contends that a charge slip is not a "writ-

---

ing obligatory." In the common-law sense of the term, defendant is correct. The Attorney General so concedes. However, we need not determine whether such term has a more modern meaning. ■■ The information informed defendant that he was charged with forging another's name on a Tidewater Oil Co. charge slip. He was therefore fully apprised of the act and crime of which he was charged. Classifying a charge slip as a writing obligatory in no way misled defendant.

■ Furthermore, defendant failed to raise this question in any way in the trial court. He is thereby precluded from urging for the first time on appeal alleged defects in the information which in nowise prejudiced his defense when the information fully apprised him of the crime charged. (*People* v. *Freudenberg* (1953) 121 Cal.App.2d 564, 593 [263 P.2d 875]; *People* v. *Ahern* (1952) 113 Cal.App.2d 746, 750 [249 P.2d 63]; *People* v. *McPheeley* (1949) 92 Cal.App.2d 589, 592 [207 P.2d 651].)

■ The contention that because gasoline credit cards were unknown in 1905, the date of the last amendment to section 470, that section cannot cover forgery of a credit sales slip, is specious. ■■ There is no requirement that the exact form of the forgery need be set forth in the statute (although there are many forms specified therein). Although automobiles and gasoline credit cards are of recent vintage, the basic underlying principles exist now as they did then. The only question is whether the acts of forgery fall within the boundaries prescribed. This brings us to the question—

2. *Can a Credit Charge Slip Be the Subject of Forgery?* Yes.

■ Defendant contends that a credit charge slip is a *nudum pactum*. This is defined as "A voluntary promise, without any other consideration than mere good will, or natural affection." (Black's Law Dict., 4th ed., 1951.) In *People* v. *Munroe* (1893) 100 Cal. 664, 667 [35 P. 326, 38 Am.St.Rep. 323, 24 L.R.A. 33], the court stated: "There is no question but that a writing which is a *nudum pactum* is not the subject of forgery." But the court said (p. 668): "If the stealing of the genuine instrument would be larceny, surely the false making of such an instrument would be forgery."

■ Signing a credit sales slip constitutes an implied promise to pay for the merchandise described on the slip. The

delivery of the merchandise (in this case, the gasoline and tires) is the consideration for the implied promise. Moreover, the stealing of the gasoline or tires would be larceny; hence the false signing of the implied promise to pay therefor is forgery.

 Section 484a, Penal Code (adopted Stats. 1961, ch. 813, p. 2090, § 1), is a detailed section making it a crime to steal a credit card, have it in possession knowing it to be stolen, and using it with such knowledge in a number of ways, including using it to obtain goods or services. The fact of the adoption of such a detailed section, says defendant, indicates that any use of a credit card prior to the adoption of section 484a, could not constitute a crime, even that of forging a credit sales slip. This is a non sequitur. A person obtaining goods through a forged sales slip and the use of a stolen credit card commits several crimes, any one of which he can be charged with: theft of the goods under section 484, violation of section 484a, or forgery under section 470.

 Nor is a charge slip of the kind here a mere "invoice." It is the primary evidence of the delivery and as we have said carries an implied promise to pay for the goods delivered. The amount shown thereon, when the signature is genuine, is charged against the holder of the credit card. These considerations are not in line with either a *nudum pactum* or an invoice.

It has been held that a sales charge slip in a department store (*People* v. *Wilson* (1934) 139 Cal.App. 139 [33 P.2d 476]) can be the subject of forgery. There is no practical difference between a sales charge slip and a credit charge slip of the kind used here. In *Wilson, supra,* the defendant secured merchandise from the store by signing on the sales slips the name of another person who had not authorized him to do so. After holding that it was immaterial whether the person whose name the defendant forged had an account at the store, the court said (pp. 141, 142): "The second ground is that in each case the sales slip which appellant signed is a receipt for the delivery of merchandise and not an order for merchandise, and therefore that the act proven did not constitute a violation of section 470 of the Penal Code. . . . As to the second assignment, it is immaterial whether the documents in question were receipts or orders for merchandise, under the reasoning of *People* v. *Munroe,* 100 Cal. 664 [35 P. 326, 38 Am.St.Rep. 323, 24 L.R.A. 33], where it is said: 'It is a matter of perfect indifference whether it possesses or not

the legal requisites of a bill of exchange or an order for the payment of money or the delivery of property. The question is whether upon its face it will have the effect to defraud those who may act upon it as genuine.' "

In *People* v. *Remsberg* (1928) 92 Cal.App. 615 [268 P. 672], the defendant was convicted of the offense of forgery. The actual forging of an automobile contract was done by another with the defendant's knowledge and for the purpose of enabling the defendant, on the strength of an apparently bona fide sale, to obtain certain moneys. In upholding the conviction, the court said (p. 617) : "Appellant's second contention that there was no contract the subject of forgery is based upon the testimony that there was no such automobile as that described by motor number in the writing. However, the infirmity of the contract is not apparent on its face. It could be used and was in fact used to defraud one acting upon it as though it were genuine. This is the test as announced in the following authorities: [citations]."

In *People* v. *McKenna* (1938) 11 Cal.2d 327 [79 P.2d 1065], the defendant forged a portion of a letter written by another and made a photostat of an assignment of mortgage, by photographing parts of several writings and signatures and affixed them to the assignment. To the contention that these documents could not be the subject of forgery within the meaning of section 470, the court in upholding the conviction for forgery, said (p. 332) : "The crime of forgery consists either in the false making or alteration of a document without authority or the uttering (making use) of such a document with intent to defraud. (§ 470, Pen. Code.) Whether the forged instrument is one of a particular name or character or, if genuine, would create legal liability, is immaterial; the test is whether upon its face it will have the effect of defrauding one who acts upon it as genuine. [Citations.] "

Applying the test set forth in the above cases to the forging of the signature on the credit sales slips in our case, there can be no doubt but that upon the face of the slips such forgery will have, and did have, the effect of defrauding those who acted upon them as genuine.

3. *Was There an Illegal Search and Seizure? No.*

Hammond Philyaw loaned his Lincoln car to defendant who said he could obtain tires for him at a discount. Defendant, without Philyaw's knowledge, replaced the license

plates on the car with stolen plates—EHZ-176. On one occasion, when defendant forged Hennessy's name to a conditional sales contract for the tires, he was using the Lincoln with the changed plates on it.

In his investigation, Palo Alto Police Officer Monasmith was told by Philyaw where defendant, to whom he had loaned his car, lived. Monasmith went to the address given to interview defendant. No one answered his knock at the door of the house. Apparently while standing there he saw the corner of a license plate protruding from a rubbish pile in the yard. He had made no search of the premises, but seeing the protruding plate and knowing that defendant had used stolen license plates in his use of the credit card, the officer went into the yard and extracted the two stolen plates, EHZ-176, from the rubbish pile. There was no unlawful search and seizure here. The officer knew that defendant had used stolen license plates in his crimes. He would have been derelict in his duty as a police officer when seeing license plates in a rubbish pile in defendant's yard had he not taken them to check whether they were ones used by defendant in his criminal operations. The sight of these plates justified a reasonable belief that they had been used in the commission of the felonies by defendant. There was no illegal activity upon the part of the officer. See *People* v. *Ruiz* (1956) 146 Cal.App.2d 630 [304 P.2d 175], where it was held that what the police officers heard and saw from outside the defendant's apartment did not constitute an unlawful search or seizure, even though they looked into the apartment through a hole in the door, and then entered and seized narcotics in the apartment. See also *People* v. *Easley* (1957) 148 Cal.App.2d 565 [307 P.2d 10], where the police officers, standing behind a patron of a bookmaking establishment, looked through the open door which had been opened to let the patron in, and observed bookmaking being carried on. The court said (p. 569) : "Of course, the use of one's eyes from the outside of a building is neither a search nor a seizure. [Citations.]" The same is true as to a yard. The officer had a right to go to defendant's home for the purpose of questioning him and is not required to disregard what is apparent to his eyes.

Defendant argued that while the sight of the license plate was probable cause for obtaining a search warrant, it was not probable cause for entering the yard and taking the plates. That argument answers itself. Moreover, to have left the plate to get a search warrant, would have unreasonably

required Monasmith to take the chance that defendant, who could by then have known that he was being investigated, would in the meantime destroy the plates or at least conceal them elsewhere.

### 4. *Exclusion of Hearsay Testimony.*

Defendant contended that the Hennessy credit card was given him by one "Johnny" Hennessy in exchange for services. After bringing out that while confined, defendant was running the jail elevator, his counsel asked him: "And you had met, you thought, it was a detective; is that right? A. Yes. Q. And you told him the story you have been telling here; correct? A. Yes. There's several County detectives I have talked to about. Q. And this one in particular, what did he say to you?" The court sustained an objection on the ground of hearsay. Defendant concedes that the conversation between defendant and the detective would be hearsay, but contends that it was admissible not for proving that there was a "Johnny" but that the detective had made some statement to defendant concerning "Johnny." Defendant did not make an offer of proof as to what the detective is purported to have said, but intimates that it indicated that the detective believed that there was a "Johnny." Defendant contends that the statement would have shown the detective's state of mind, citing *Johnson* v. *Nicholson* (1958) 159 Cal.App.2d 395 [324 P.2d 307], holding that where a person's state of mind is a fact in issue, word utterances which show the state of mind are admissible. However, the detective's state of mind was not an issue in the case, nor was the defendant's at the time of the conversation. Defendant relies on the rule of *Werner* v. *State Bar* (1944) 24 Cal.2d 611, 621 [150 P.2d 892], "The hearsay rule, however, does not forbid the introduction of evidence that a statement has been made when the making of a statement is significant irrespective of the truth or falsity of its content." That rule, however, has no application here.

Moreover, the following from *People* v. *Temple* (1951) 102 Cal.App.2d 270, 279 [227 P.2d 500], is applicable here: "The law is established that where a question to which an objection is sustained does not itself indicate that the answer will be favorable to the party seeking to introduce the testimony, before the ruling will be reviewed on appeal an offer of what is proposed to be proven must first be made to the trial court so that the reviewing court may determine whether the evidence would be beneficial to the party offering

it. (*People* v. *Ratten*, 39 Cal.App.2d 267, 270 [102 P.2d 1097].)''

5. *Alleged Failure to Subpoena a Sheriff's Detective.*

Defendant's brief in a heading states: ''The failure to subpoena a sheriff's detective was a violation of the Due Process Clause of the 4th and 14th amendments of the U.S. Constitution . . .'' In his argument in support of that heading defendant sets forth no facts nor any reference to the record concerning this subject. He states: ''Although the contention was not brought forth at the trial nor was a continuance asked for at the trial, the right was not not [*sic*] waived.'' We are at a loss to understand what this is all about. We have searched the record and find no reference to such a subpoena being issued nor any showing that if issued, it was not served. Nor was the attention of the court called to the failure to serve such subpoena, if there was a failure so to do. ■ As the record fails to show any basis for defendant's claim, whatever it may be, such claim must be disregarded. (See *People* v. *Clark* (1959) 176 Cal.App.2d 316, 319 [1 Cal. Rptr. 176].)

Judgment affirmed.

Tobriner, J., and Sullivan, J., concurred.