[Crim. No. 10560. First Dist., Div. One. June 19, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
WAYNE EVERETT GINGLES, Defendant and Appellant.

**COUNSEL**

Richard John Frick, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Joyce F. Nedde and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—Defendant has appealed from an order admitting him to probation[1] following his conviction of credit card forgery in violation of sub-

---

[1] The defendant was originally admitted to probation on condition that he serve one year in the county jail with credit for time served. The order provided that

division (2) of section 484f of the Penal Code.[2] Defendant was charged with this offense[3] and two prior felony convictions. Following a plea of guilty and denial of the priors; his motion to dismiss the information for lack of probable cause under section 995 of the Penal Code was denied September 30, 1971. Thereafter a writ of prohibition was denied by the Court of Appeal on November 10, 1971,[4] and court records indicate that the defendant's petition for a hearing in the Supreme Court was denied December 9, 1971. On December 13, 1971, he withdrew his plea of not guilty and pleaded guilty to the offense charged in the information. The two prior convictions were stricken by the court. At the same time the public defender filed on behalf of the defendant a "Statement In Support Of Request For Certificate Of Probable Cause" supported by points and authorities raising the contentions advanced on this appeal. Following the entering of the order admitting him to probation on January 5, 1972, the defendant filed notice of appeal and a request for a certificate of probable cause as required by section 1237.5 of the Penal Code. This certificate was issued February 2, 1972.

█ Defendant contends that the facts brought out at the preliminary hearing demonstrate that the offense he committed was the misdemeanor

---

probation would terminate upon defendant's release from jail. He states in his brief that probation has been modified to release him to obtain employment after he had served nine months, and that at that time the term of his probation was extended.

[2]Subdivision (2) of section 484f of the Penal Code reads: "A person other than the cardholder or a person authorized by him who, with intent to defraud, signs the name of another or of a fictitious person to a credit card, sales slip, sales draft, or instrument for the payment of money which evidences a credit card transaction, is guilty of forgery."

[3]The information reads: "The District Attorney of the County of Contra Costa hereby accuses WAYNE EVERETT GINGLES, defendant of the crime of Felony, to wit, violation of SECTION 470-484f(2) (Credit Card Forgery), CALIFORNIA PENAL CODE committed as follows, to wit: That said defendant on or about July 12, 1971 at Mt. Diablo Judicial District in Contra Costa County, State of California, did then and there unlawfully, willfully and feloniously with intent to defraud, sign the name of John Thomas Herring to a sales slip, which evidenced a Sears credit card transaction. . . ." Defendant asserts that it is unclear from the information and record whether defendant was charged and convicted of two felony violations, because two sections are set forth in the information. He asserts that the dash between the section numbers and the parenthetical expression "(Credit Card Forgery)" seem to indicate that the sections were charged in the conjunctive. Since only one count is involved, only one offense is charged and the "470" may be disregarded as surplusage used to refer to the general charge of forgery and the punishment therefor which by section 473 is prescribed as imprisonment in the state prison for not less than one year nor more than fourteen years, or by imprisonment in the county jail for not more than one year.

[4]This petition (1 Civ. 30495, Div. 2) raised the same contentions as are raised on this appeal.

offense proscribed by section 484g[5] of the Penal Code, and that it was improper to charge him with and convict him of the felony forgery charge. This claim is predicated upon the principle that where an offense falls within the provisions of a general statute and also within the provisions of a special statute, the latter statute should be applied. It is concluded that the provisions enacted at the time of the revision of sections dealing with credit card offenses demonstrate an intent that a violator may be prosecuted under any statute he violates, and that in any event the facts giving rise to the offense charged fell specifically within the provisions of subdivision (2) of section 484f. The order must be affirmed.

The facts of this case are not in dispute and were elicited at the preliminary hearing.

Mrs. Verna Herring testified that on the evening of July 11, 1971, she was at a dance and bar in Napa. The next day she discovered that someone had taken her wallet out of her pocket at the dance. The wallet was recovered in front of a radio station later that morning, but some money and credit cards made out to John T. Herring, including two Penney's, one Sears, one Montgomery Ward, and one Union Oil, were missing. No one had been given permission to use these cards.

---

[5]Penal Code section 484g provides: "Every person, who with intent to defraud, (a) uses for the purpose of obtaining money, goods, services or anything else of value a credit card obtained or retained in violation of Section 484e or a credit card which he knows is forged, expired or revoked, or (b) obtains money, goods, services or anything else of value by representing without the consent of the cardholder that he is the holder of a credit card or by representing that he is the holder of a credit card and such card has not in fact been issued, is guilty of theft. If the value of all money, goods, services and other things of value obtained in violation of this section exceeds two hundred dollars ($200) in any consecutive six-month period, then the same shall constitute grand theft."

Section 484e, which is referred to in section 484g, reads: "(1) Every person who acquires a credit card from another without the cardholder's or issuer's consent or who, with knowledge that it has been so acquired, acquires the credit card, with intent to use it or to sell or transfer it to a person other than the issuer or the cardholder is guilty of petty theft.

"(2) Every person who acquires a credit card that he knows to have been lost, mislaid, or delivered under a mistake as to the identity or address of the cardholder, and who retains possession with intent to use it or to sell it or to transfer it to a person other than the issuer or the cardholder is guilty of petty theft.

"(3) Every person who sells, transfers, conveys or receives a credit card with the intent to defraud is guilty of petty theft.

"(4) Every person other than the issuer, who within any consecutive 12-month period, acquires credit cards issued in the names of four or more persons which he has reason to know were taken or retained under circumstances which constitute a violation of subdivisions (1), (2), or (3) of this section is guilty of grand theft."

Under Penal Code section 490 if the theft referred to in section 484g is not grand theft it is a misdemeanor, punishable by a fine not exceeding $500 or imprisonment in the county jail for not exceeding six months.

On July 12 defendant presented the Sears credit card to a sales clerk at Sears Roebuck in Sun Valley. He purchased underwear, socks, and a shirt with the total purchase amounting to less than $40. The clerk made out a sales slip for the items using the credit card, and defendant signed the sales slip as Mr. John Herring.

After defendant left with the purchases, the security manager discovered that the credit card was stolen. He followed defendant to another location in the store, where defendant attempted to make another purchase, and asked to see the credit card. The clerk handed it to him and he saw Mr. Herring's signature on the back. The security officer asked defendant for some identification, and defendant showed him a wallet full of credit cards with John Herring's name on them. The manager then discovered that defendant's name was Gingles and not Herring.

I

Section 470 of the Penal Code provides in pertinent part, "Every person who, with intent to defraud, signs the name of another person . . . knowing that he has no authority so to do . . . is guilty of forgery." The section also evidences the Legislature's intent to punish anyone who "falsely makes, alters, forges, or counterfeits" any one of some fourscore types of written instruments; or who "counterfeits or forges the seal or handwriting of another," or who "utters, publishes, passes, or attempts to pass, as true and genuine," any of the instruments referred to, "knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage or defraud any person," or who "with intent to defraud, alters, corrupts, or falsifies" certain designated records.

Although the section does not mention credit cards it was held applicable to credit card forgery in *People* v. *Searcy* (1962) 199 Cal.App.2d 740, 743-745 [18 Cal.Rptr. 779, 90 A.L.R.2d 814]. (See also *People* v. *Liberto* (1969) 274 Cal.App.2d 460, 463 [79 Cal.Rptr. 306].) In the *Searcy* case the court indicated that in the absence of a rule to the contrary there was no reason that the defendant could not be charged and convicted of more than one crime even though they arose out of the same course of conduct. (*Id.* at p. 744.) (Section 654 would preclude punishment for any but the most serious offense.) The court in that case noted that the adoption of section 484a of the Penal Code (Stats. 1961, ch. 813, § 1, p. 2090)[6] did not indicate that section 470 did not

---

[6]Former section 484a provided in part in subdivision (b):
"(b) Any person who:
"   .     .      .      .      .      .      .      .      .
"(6) Knowingly uses or attempts to use for the purposes of obtaining goods, prop-

embrace the acts charged. (*Id.* at p. 744.) In fact section 470 not only refers to signing the name of another, but also refers to falsely making or forging "any . . . contract . . . due bill for the payment of money or . . . receipt for . . . property, . . ."

Nevertheless, after the adoption of section 484a, it was held in *People v. Swann* (1963) 213 Cal.App.2d 447 [28 Cal.Rptr. 830], that offenses occurring after the adoption of that section should be prosecuted and punished under section 484a and not under section 470. The court stated, "It seems clear that the Legislature by enactment of section 484a evidenced an intent to state the penal law with respect to misuse of credit cards and to provide appropriate penalties for varying degrees of such offenses. Formerly, criminal laws governing credit card offenses came under various sections of the Penal Code, e.g., section 484 (theft), section 470 (forgery) and section 485 (lost property). [Citations.]" (213 Cal. App.2d at p. 451.) It expressly noted "The People's argument that the signing of the credit invoices should be separated from the 'use' of the credit card making such signing separately chargeable as forgery is without merit. Certainly the Legislature in enacting section 484a, Penal Code, contemplated false or unauthorized signatures on credit invoices by parties engaged in the misdemeanor use of credit cards under subsection (6) of subdivision (b) of the statute since such signatures are required of credit card users in the customary use of such cards." (*Id.* at p. 451.)

This analysis was an application of the general principle expressed in section 1859 of the Code of Civil Procedure as follows: "In the construction of a statute the intention of the Legislature . . . is to be pursued, if possible; and when a general and [a] particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it." (See also *People v. Gilbert* (1969) 1 Cal.3d 475, 479-480 [82 Cal.Rptr. 724, 462 P.2d 580]; *In re Williams* (1969) 1 Cal.3d 168, 172-173 [81 Cal.Rptr. 784, 460 P.2d 984]; *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593]; *Williams* v. *Superior Court* (1973) 30 Cal.App.3d 8, 15 [106 Cal. Rptr. 89]; *People* v. *Superior Court* (1971) 14 Cal.App.3d 935, 945-949 [92 Cal.Rptr. 545]; *In re Greenfield* (1970) 11 Cal.App.3d 536, 542-543 [89 Cal.Rptr. 847]; *People* v. *Scott* (1968) 259 Cal.App.2d 589, 591-

---

erty, services or anything of value, a credit card which was obtained, or is held by the user, under circumstances which would constitute a crime under paragraphs (1), (2) or (3) of this subdivision, is also guilty of a misdemeanor if the total amount of goods, property or services or other things of value so obtained by such person does not exceed fifty dollars ($50), or is also guilty of a felony, if the total amount of goods, property or services or other things of value so obtained by such person exceeds fifty dollars ($50)." (Stats. 1961, ch. 813.)

593 [66 Cal.Rptr. 432]; *People* v. *Churchill* (1967) 255 Cal.App.2d 448, 452 [63 Cal.Rptr. 312] [disapproved on another issue *People* v. *Bauer* (1969) 1 Cal.3d 368, 378 (82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R. 3d 1398)], and cf. *id.* at pp. 453-454; *People* v. *Wood* (1958) 161 Cal. App.2d 24, 29-30 [325 P.2d 1014]; and *People* v. *Silk* (1955) 138 Cal. App.2d Supp. 899, 900-902 [291 P.2d 1013].)

In *People* v. *Ali* (1967) 66 Cal.2d 277 [57 Cal.Rptr. 348, 424 P.2d 932] the court approved *People* v. *Swann, supra,* and citing it stated, "Section 484a of the Penal Code was clearly intended to codify into one section all credit card offenses formerly prosecuted under various sections of the Penal Code; and, as a result of its enactment, a person charged with an offense involving a credit card may not be prosecuted therefor under the general statutes. [Citation.]" (66 Cal.2d at p. 279.)

In 1967 the Legislature repealed section 484a (Stats. 1967, ch. 1395, § 1, p. 3258) and enacted new, comprehensive provisions dealing with credit card matters as sections 484d through 484i of the Penal Code. (*Id.,* §§ 2-7, pp. 3258-3260.) The new statute included a section which reads: "This act shall not be construed to preclude the applicability of any other provision of the criminal law of this state which presently applies or may in the future apply to any transaction which violates this act." (*Id.,* § 8, p. 3260. See *In re Williams, supra,* 1 Cal.3d 168, 173, fn. 2.)

The report of the 1967 Assembly Committee on Criminal Procedure states at page 16: "Section 9 [*sic,* ultimately 8] of the bill provides that any transaction which violates the terms of the bill and at the same time violates any other provision of the law is prosecutable under *either* provision." (Italics added.)

The effect of section 8 was specifically considered in *People* v. *Liberto, supra,* 274 Cal.App.2d 460, which involved defendant's claim that since the information alleged the forgery of a "sales slip" he should have been prosecuted under Penal Code section 484f, subdivision (2), and not the general provisions of section 470. The court in *Liberto* concluded that *Swann* and *Ali* should not be followed in light of section 8 and the following analysis: "Since in general the rules of statutory construction are applicable to penal statutes [citation], it can be assumed that the Legislature, in enacting the 1967 law, was familiar with existing judicial decisions construing the same or related legislation. [Citation.] Too, 'It is ordinarily to be presumed that the Legislature by deleting an express provision of a statute intended a substantial change in the law. [Citation.] It has been repeatedly declared that where changes have been introduced by amendment it is not to be assumed that they were without design and, further, that by substantially

amending a statute the Legislature demonstrates an intent to change the pre-existing law. [Citation.]' *(People* v. *Valentine,* 28 Cal.2d 121, 142. . . .) The use by the Legislature in section 8 of the language 'any other provision of the criminal law' is all-encompassing, making no distinction between general or special statutes as long as the criminal activities are within the proscribed scope of such enactments. Of further significance is the passage of such legislation within a few months after the decision in *Ali* which, as shown earlier, applied the then existing law to the facts there at bar. As was done in *Ali,* we are enjoined by section 4 of the Penal Code to construe the provisions of that code 'according to the fair import of their terms with a view to effect its objects and to promote justice.' The language of section 8 being clear and unequivocal, it must be concluded that the Legislature by the further enactment of section 1 (repealing section 484a) thereby specifically intended to overcome the interpretation theretofore placed upon relevant credit card prosecutions by *Swann* and other California decisions." (274 Cal.App.2d at p. 464, fn. omitted. See also *People* v. *Neder* (1971) 16 Cal.App.3d 846, 855 [94 Cal.Rptr. 364]; and *People* v. *Cobb* (1971) 15 Cal.App.3d 1, 4 [93 Cal.Rptr. 152].)

In *People* v. *Gilbert, supra,* the court expressly noted, ". . . If the Legislature wanted to retain the theft penalty in welfare fraud cases, it would have explicitly so stated. (Compare *People* v. *Swann* (1963) 213 Cal.App.2d 447 . . . with Pen. Code, § 484g.)" (1 Cal.3d at p. 481, fn. 5.)

Defendant asserts that the cases last cited do not govern the choice of statutes in this case because in each the court permitted a prosecution under Penal Code section 470 and there was really no choice of penalties because the alternative suggested was a prosecution under section 484f which itself, as forgery, carried a felony penalty. (See *People* v. *Neder, supra,* 16 Cal. App.3d at p. 855; *People* v. *Cobb, supra,* 15 Cal.App.3d at p. 4; and *People* v. *Liberto, supra,* 274 Cal.App.2d at p. 463.) Moreover in the last cited case the value of the goods obtained was over that which would reduce the theft of the goods to petty theft. (274 Cal.App.2d at pp. 461-462.)

Since section 8 of the 1967 act clearly contemplates that the provisions of section 470 of the Penal Code may be charged when the facts come within its scope, i.e., when a person "with intent to defraud, signs the name of another person . . . knowing that he has no authority so to do," the Legislature must have intended that such an act could be charged and punished as a felony. In fact since former section 484a had no provision

commensurate with newly enacted subdivision (2) of section 484f, the adoption of the latter subdivision was another exposition of the same intent. The fact that section 8 may be construed to permit only overlapping with statutes not embraced within chapter 1395 of the 1967 statutes and not overlapping within the provisions of that chapter, does not require a different conclusion. When the accused has fraudulently signed the name of another he is clearly subject to punishment as a forger.

Defendant's argument that the punishment provided for acts punishable under several statutes should be the sole test will not hold water. Many cases of forgery involve theft. The Legislature has provided that one who obtains property by means of a bad check (§ 476a), or by carrying away merchandise (§§ 484-488) may be treated as a misdemeanant if the amount involved is not great. It has not so provided with forgery in general, and there is therefore no reason to hold that it so intended with the forgery specifically relating to credit cards which is defined in section 484f.

In *People* v. *Neder, supra,* in answer to the contention that several purchases on forged sales slips should be treated as one, the court observed: "The essential act in all types of theft is taking. If a certain amount of money or property has been taken pursuant to one plan, it is most reasonable to consider the whole plan rather than to differentiate each component part. [Citation.] The real essence of the crime of forgery, however, is not concerned with the end, i.e., what is obtained or taken by the forgery; it has to do with the means, i.e., the act of signing the name of another with intent to defraud and without authority, or of falsely making a document, or of uttering the document with intent to defraud. Theft pursuant to a plan can be viewed as a large total taking accomplished by smaller takings. It is difficult to apply an analogous concept to forgery. The designation of a series of forgeries as one forgery would be a confusing fiction." (16 Cal.App.3d at pp. 852-853, fn. omitted.)

## II

In any event defendant's attempt to show that the facts of the case specifically fall within section 484g rather than within the provisions of section 484f do not bear analysis. Section 484f, subdivision (2) applies to "A person other than the cardholder or a person authorized by him. . . ." The evidence was clear that defendant was such a person. It proscribes signing the name of another (which defendant did) with intent to defraud (which is inferable from the circumstances) to a sales slip which evidences a credit card transaction (such a sales slip was introduced in evidence).

Defendant's contention that subdivision (2) of section 484f is limited in application to types of conduct which embrace wholesale credit card forgery operations is not warranted from the wording of the statute. (See fn. 2 above.)[7] The salient element of the subdivision is the signing of the name of another or of a fictitious person in connection with the transaction. Such is forgery.

Section 484g deals with theft. On its face it has no reference to signing and merely refers to the use of certain described credit cards: (1) a credit card obtained or retained in violation of section 484e, that is, wrongfully acquired or retained (see fn. 5 above); (2) a credit card known to be forged; (3) a credit card known to be expired; and (4) a credit card known to have been revoked. (Cf. former § 484a, subds. (b)(6) and (c); Stats. 1961, ch. 813, § 1, p. 2091.) If a person with the intent to defraud uses such a card for the purpose of obtaining money, goods, services or anything else of value, he is guilty of theft. The section apparently also covers the situation where no card is involved but money, goods, services or anything else of value is obtained by one who represents, without the consent of the cardholder, that he is the holder of an extant card, or who represents that he is the holder of a credit card when no such card has in fact been issued. As can be appreciated from the foregoing analysis section 484g covers a multitude of sins, of varying severity. The cardholder using an expired or revoked credit card, or one using a card which he knows to have been lost, mislaid or misdelivered, may be deemed less culpable than one who brazenly signs another's name while using a stolen credit card. Nevertheless the Legislature has provided a misdemeanor penalty for all using the card who obtain less than $200.

The defendant contends that inasmuch as *People* v. *Swann, supra,* equated signing with use (213 Cal.App.2d at p. 451), section 484g specifically applies, and the prosecution cannot enhance the punishment to a felony by charging and proving forgery of the sales slip when the value of all money, goods, services and other things of value obtained by the accused does not exceed $200 in any consecutive six-month period. The ready answer to this is that the Legislature has expressly provided, contrary to *Swann,* that the signing, when a forgery, may be punishable as such.

Defendant concedes that there may be uses where no signing or forgery is involved such as by an aider and abettor who sends another to use the

---

[7]Subdivision (1) of section 484f deals with forgery of a credit card itself as follows: "(1) Every person who, with intent to defraud, makes, alters, or embosses a card purporting to be a credit card or utters such a card is guilty of forgery." (Cf. former § 484a, subd. (b)(5); Stats. 1961, ch. 813, § 1, p. 2091.)

card. (See *People* v. *Neder, supra,* 16 Cal.App.3d 846, 851.) Moreover, the use of an expired or revoked credit card does not involve forgery, and the use of a forged credit card to obtain goods may not involve forgery of the sales slip used to obtain goods, if the forgery relates to the issuer and not the holder. Nor would any forgery be necessary in falsely representing that there is a credit card, which in fact does not exist. It appears that the majority of the uses proscribed by section 484g can be accomplished without forgery, and the alleged truism of *Swann* is inapplicable. Finally, it should be noted that section 484g and not section 484f would apply where the diligent clerk notes a lost, stolen or otherwise wrongfully acquired or retained credit card before the transaction can be consummated by the signing of the sales slip.

If, as indicated above, the Legislature intended to distinguish between signing as proscribed by subdivision (2) of section 484f, and using as prohibited by section 484g, it is clear that the latter section does not include all of the elements of the offense proved. In *People* v. *Randono* (1973) *ante,* page 164 [108 Cal.Rptr. 326], it was contended that where the facts showed removal, disposal and concealment of property by a debtor, an offense under section 154 of the Penal Code, the offender could not be punished for grand theft under section 484. After referring to the rule which defendant relies upon in this case (see part I above), the court observed: ". . . conversely, a special statute does not supplant a general statute unless all the requirements of the general statute are covered in the special statute. [Citations.]" (*Ante,* at p. 179.)

It is concluded that the statute under which the defendant was charged and convicted specifically applies to the offense he committed, and that he cannot complain because he was not charged with a lesser offense which involved different elements.

The order admitting defendant to probation is affirmed.

Molinari, P. J., and Elkington, J., concurred.