Filed 7/20/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VIOLET FELECITY BLOOMFIELD,<br><br>    Defendant and Appellant. | A148919<br><br>(Marin County<br>Super. Ct. No. SC187770) |

Defendant Violet Felecity Bloomfield appeals from an order denying her petition for relief under Proposition 47. Defendant contends the trial court erred in refusing to reduce her convictions for two counts of access card forgery from felonies to misdemeanors. We affirm.

## I. BACKGROUND

A complaint filed on February 7, 2014, charged defendant with nine offenses, including, among others, felony counts of access card forgery (Pen. Code,[1] § 484f, subd. (a); counts 1, 5, 9) and one misdemeanor count of petty theft (§ 484, subd. (a); count 2).

The following facts regarding the access card forgery offenses at issue in this appeal (counts 1 & 5) are taken from the probation report. In January 2014, a taxi driver reported to police he had picked defendant up and driven her to several locations in Marin County. Defendant attempted to pay the $73.53 cab fare with a prepaid debit card, but the charge did not go through. When police searched defendant, they located a Green

---

[1] All statutory references are to the Penal Code.

Dot prepaid Visa card with defendant's name and another individual's name embossed on it.

A week later, defendant attempted to purchase dinner at a fast food restaurant. A store employee contacted police because he remembered defendant from an earlier incident when she attempted to purchase food using a stolen credit card. When the police searched defendant's car, they located several credit cards with numbers removed or altered. Several cards had defendant's name on them.

Defendant pled guilty to two felony counts of access card forgery (counts 1 & 5), the misdemeanor petty theft, and a second degree burglary charge in exchange for dismissal of the remaining counts and other cases. In December 2015, defendant filed a resentencing petition, seeking to reduce her two felony convictions for access card forgery to misdemeanors pursuant to section 1170.18, subdivision (a).[2] The trial court denied the petition as to the access card forgery charges, but granted it as to the petty theft conviction. Defendant timely appealed.

## II. DISCUSSION

Defendant contends the trial court erred in denying her petition to resentence her access card forgery offenses as misdemeanors under Proposition 47. She also argues exempting access card forgery from Proposition 47 relief violates her rights under the equal protection clauses of the United States and California Constitutions.

**A.** *Eligibility for Misdemeanor Sentence*

We first address defendant's argument the trial court erred by denying her resentencing petition because her access card forgery offenses should have been reduced to misdemeanors under section 473, subdivision (b).

In November 2014, the California electorate passed Proposition 47, the Safe Neighborhoods and Schools Act. (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1089.)

---

[2] Defendant's petition also sought to reduce her conviction for second degree burglary on count 8, but defendant conceded she did not have enough information to meet her burden of proof on that count and the court denied the petition. Defendant does not challenge that ruling on appeal.

"Proposition 47 was intended to ensure prison spending is focused on violent and serious offenders, to maximize alternatives for nonserious, nonviolent crimes, and to invest the savings generated thereby into educational, social, and mental health causes. [Citation.] To this end, Proposition 47 reduced most possessory drug offenses and thefts of property valued at $950 or less to straight misdemeanors." (*People v. Brown* (2017) 7 Cal.App.5th 1214, 1217.) The initiative also allowed defendants currently serving felony sentences for such offenses to petition the court for resentencing. (§ 1170.18.)

Prior to Proposition 47, all forgery offenses were "wobblers," meaning they could be charged and punished either as a felony or a misdemeanor. (§§ 17, subd. (b)(1), 473, subd. (a) ["Forgery is punishable by imprisonment in a county jail for not more than one year, or by imprisonment pursuant to subdivision (h) of Section 1170."].) Proposition 47 amended section 473 to add a new subdivision (b) (section 473(b)), which states, in relevant part: "Notwithstanding subdivision (a), any person who is guilty of forgery relating to a check, bond, bank bill, note, cashier's check, traveler's check, or money order, where the value of the check, bond, bank bill, note, cashier's check, traveler's check, or money order does not exceed nine hundred fifty dollars ($950), shall be punishable by imprisonment in a county jail for not more than one year . . . . This subdivision shall not be applicable to any person who is convicted both of forgery and of identity theft, as defined in Section 530.5."

Defendant was convicted of access card forgery under section 484f, subdivision (a) (section 484f(a)).[3] She argues section 473(b) must be construed to apply not just to forgery by means of the seven instruments explicitly listed in the statute, but to *all* forgery offenses (including hers) where the value of the instrument is less than $950. Defendant asserts such an interpretation is consistent both with established principles of statutory construction and with the intent of the voters to reduce penalties for nonserious, nonviolent crimes. We disagree.

---

[3] Section 484f(a) states: "Every person who, with the intent to defraud, designs, makes, alters, or embosses a counterfeit access card or utters or otherwise attempts to use a counterfeit access card is guilty of forgery."

When interpreting a voter initiative, as with a statute, we look first at the plain language of the enactment, giving the words their ordinary meaning. (*People v. Rizo* (2000) 22 Cal.4th 681, 685.) " 'If the language is unambiguous, there is no need for further construction. If, however, the language is susceptible of more than one reasonable meaning, we may consider the ballot summaries and arguments to determine how the voters understood the ballot measure and what they intended in enacting it.' " (*People v. Gonzales* (2017) 2 Cal.5th 858, 868 (*Gonzales*).)

Looking at the plain meaning of the words in the statute, section 473(b) provides forgery will be classified as a misdemeanor when a defendant has used one of seven specific instruments (check, bond, bank bill, note, cashier's check, traveler's check, or money order) valued at $950 or less. Under the maxim of statutory construction "*expressio unius est exclusio alterius* . . . . , ' "where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed." ' " (*People v. Quiroz* (2011) 199 Cal.App.4th 1123, 1130.) Employing this principle, the specific language used in section 473(b) means forgery crimes are classified as straight misdemeanors *only* when one of the seven listed instruments is used to commit the crime. (*People v. Martinez* (2016) 5 Cal.App.5th 234, 242–243 (*Martinez*).) In all other cases, forgery offenses are wobblers. (§ 473, subd. (a); see *Martinez*, at p. 242.)

Defendant urges us to construe section 473(b) in the context of the entire statutory scheme for forgery, but doing so further supports our conclusion section 473(b) was intended to provide a limited exclusion for seven specific types of forgery. In section 470, subdivision (d) (section 470(d)), the general forgery statute lists over 50 different instruments that constitute forgery—the first seven of which correspond precisely to the instruments identified in section 473(b). (*Martinez, supra,* 5 Cal.App.5th at p. 242.) Had the drafters of Proposition 47 intended to redesignate *all* forgery offenses valued at less than $950 as misdemeanors, they could have listed each of the instruments identified in section 470(d), rather than only the first seven; or more, simply, they could have referred to "forgery" as defined in section 470. We will not rewrite the statute on their behalf. (See *People v. Guzman* (2005) 35 Cal.4th 577, 587 [" 'insert[ing]'

4

additional language into a statute 'violate[s] the cardinal rule of statutory construction that courts must not add provisions to statutes. [Citations.] . . . [A] court must not 'insert what has been omitted' from a statute.' "]; *Martinez*, at p. 242 [to adopt argument that " 'receipt for goods' " forgery convictions are misdemeanors, court would have to add " 'receipt for goods' " to language in section 473(b)].)

Defendant's reliance on cases predating Proposition 47 that interpreted the instruments listed in section 470(d) as a nonexhaustive list of forgery offenses is unpersuasive. Defendant argues "by framing section 473[(b)] in the same language of section 470[(d)]," the voters "intended to adopt the construction of the general forgery statute, i.e., that the listed instruments are non-exclusive and that the instrument's name or character is 'immaterial.' " As discussed above, however, section 473(b) is *not* framed in the same language as section 470(d) but specifically references only seven of the instruments in that section. Voters are presumed to be aware of existing laws and judicial interpretation of those laws. (*Gonzales, supra,* 2 Cal.5th at p. 869.) We must assume the voters were aware of the broad general definition of forgery and that courts had interpreted section 470(d) to apply to forgery involving access cards. (See *People v. Searcy* (1962) 199 Cal.App.2d 740, 743–745; *People v. Gingles* (1973) 32 Cal.App.3d 1030, 1034.) By not using the language in section 470(d) and instead identifying only seven specific instruments for reduced punishment in section 473(b), the voters deliberately signaled their intent *not* to include all forgery offenses in Proposition 47.

Because the language of the statute is clear and unambiguous, we need look no further to ascertain the intent of the voters. (*Gonzales, supra,* 2 Cal.5th at p. 868.) But even when we look beyond the words of the statute to the ballot materials, we are not persuaded by defendant's argument the voters intended Proposition 47 to apply to her access card forgery conviction. The summary of the initiative included in the ballot materials states the law "Requires misdemeanor sentence instead of felony for the following crimes when amount involved is $950 or less: petty theft, receiving stolen property, and *forging*/writing *bad checks*." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) official title and summary of Prop. 47, p. 34, italics added (Guide).) In a

5

section entitled "Reduction of Existing Penalties," the Legislative Analyst's analysis further explains: "**Check Forgery.** Under current law, it is wobbler crime to *forge a check* of any amount. Under this measure, *forging a check* worth $950 or less would always be a misdemeanor, except that it would remain a wobbler crime if the offender commits identity theft in connection with *forging a check*." (Guide, *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35, italics added.) In each instance where the ballot materials mention forgery offenses, they specifically refer to *check* forgery. This language suggests the voters intended to limit Proposition 47's reduced penalties for forgery to check-related offenses.

In her reply brief, defendant relies on *People v. Romanowski* (2017) 2 Cal.5th 903 (*Romanowski*) and *Gonzales*, *supra,* 2 Cal.5th 858, two recent California Supreme Court opinions which defendant contends "strongly signal its intent to broadly interpret and liberally apply Proposition 47 to minor offenses, even those not specifically enumerated in the amended or newly-enacted statutes." Defendant asserts our high court's reasoning in those cases supports her argument that Proposition 47 necessarily altered the punishment for her forgery conviction. *Romanowksi* and *Gonzales* are distinguishable, however, because they concerned different crimes with much broader statutory provisions for misdemeanor treatment.

*Romanowski* held *theft* of access card information under section 484e, subdivision (d) is one of the crimes eligible for reduced punishment under Proposition 47. (*Romanowski, supra,* 2 Cal.5th at pp. 906, 917.) In reaching its holding, the Supreme Court examined the language of the newly enacted section 490.2, which states: "*Notwithstanding Section 487 or any other provision of law defining grand theft*, obtaining *any property* by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor . . . ." (§ 490.2, subd. (a), italics added.) Noting various theft statutes in place prior to Proposition 47 defined categories of grand theft based on the type of property stolen, the Supreme Court concluded the effect of section 490.2 was to modify such provisions by making theft of *any property* worth less

6

than $950 a misdemeanor.  (*Romanowski, supra,* 2 Cal.5th at p. 908.)  Because section 484e, subdivision (d) defined access card theft as grand theft, it was "[o]ne of those 'other provision[s] of law defining grand theft' for which Proposition 47 reduced punishment." (*Romanowski*, at p. 908.)

Proposition 47's amendment reducing punishment for certain forgery crimes operates differently than section 490.2.  Section 490.2 changed the meaning of "grand theft" where it is defined in "any other provision of law," *eliminating* distinctions based on the type of property stolen when the property is worth $950 or less.  (*Romanowksi, supra,* 2 Cal.5th at p. 908.)  Because of its "*unqualified* references" to " 'obtaining any property by theft' " and " 'any . . . provision of law defining grand theft,' " the Supreme Court construed section 490.2 broadly to encompass theft of access card information.  (*Romanowski*, at p. 910, italics added.)  Section 473(b), by contrast, did not change (or even reference) the definition of forgery but *created* a distinction among forgery offenses for severity of punishment based on the type and value of the instrument used.  The Supreme Court's analysis of Proposition 47's effect on theft crimes in *Romanowksi* is consistent with the breadth of the language used in section 490.2, but no such intent appears from the much narrower language of section 473(b) concerning punishment for forgery.

*Gonzales* is also not controlling here.  In *Gonzales,* the Supreme Court held entering a bank to cash a stolen check for less than $950 is "shoplifting" within the meaning of section 459.5, a new misdemeanor crime created by Proposition 47.  (*Gonzales, supra,* 2 Cal.5th at p. 862.)  Section 459.5 provides shoplifting is "entering a commercial establishment with intent to commit larceny" during business hours when the property taken is worth $950 or less.  Our high court rejected the Attorney General's argument the defendant did not commit shoplifting because entering a bank with intent to pass forged checks was "theft by false pretenses" rather than "larceny." (*Gonzales*, at pp. 864–868.)  Because California consolidated all theft offenses in section 490a, the court reasoned "larceny" in section 459.5 must be construed to mean "theft," just as it does in the general burglary statute.  (*Gonzales*, at pp. 865, 868–869.)  Defendant

emphasizes *Gonzales* focused on the value of the transaction rather than the form of theft as the demarcation between felonies and misdemeanors and suggests we apply the same analysis to section 473(b). (See *Gonzales*, at p. 870.) Unlike section 459.5, however, section 473(b) does not define a new crime applicable to all forms of theft, but mandates misdemeanor treatment for forgery only when seven specific instruments are involved. Section 459.5's focus is on the value of the property stolen, but section 473(b) concerns *both* the type of instrument used in the forgery and its monetary value.

We likewise reject defendant's argument that construing section 473(b) to exclude access card forgery would lead to the " 'absurd and unreasonable' result that one who simply 'attempts to use' an altered credit card to purchase goods or services worth $950 or less in violation of section 484f[(a)] would be punished more severely than one who completes such a purchase in violation of section 484g."[4] "To justify departing from a literal reading of a clearly worded statute, the results produced must be so unreasonable the Legislature could not have intended them." (*In re D.B.* (2014) 58 Cal.4th 941, 948.) We are unable to reach such a conclusion here.

First, theft under section 484g and forgery under section 484f are different crimes, with different elements. (§ 484g [defining use of access card altered, obtained, or retained in violation of §§ 484e or 484f as theft]; § 484f, subd. (a) ["Every person who with the intent to defraud, designs, makes, alters, or embosses a counterfeit access card or utters or otherwise attempts to use a counterfeit access card is guilty of forgery."]; see

---

[4] Defendant suggests excluding access card forgery offenses from Proposition 47 relief under section 473(b) is absurd because it gives rise to a sentencing scheme that is " 'suspect' " and " 'may be excessive' " for purposes of the Eighth Amendment. Because defendant neither contends section 473 violates the Eighth Amendment's prohibition against cruel and unusual punishment as applied to her nor makes a showing the statute is facially invalid, we reject her contention. (See *People v. Rodriguez* (1998) 66 Cal.App.4th 157, 166 [generally to prevail on facial challenge to constitutionality of statute, party must establish that no set of circumstances exists under which the regulation would be valid]; *In re Lynch* (1972) 8 Cal.3d 410, 414–415, superseded on other grounds as stated in *People v. Caddick* (1984) 160 Cal.App.3d 46, 51 [" ' "Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears." ' "].)

*People v. Gingles*, *supra*, 32 Cal.App.3d at p. 1039 [discussing differences between theft under former § 484g and forgery under former § 484f].)  As the court explained in *People v. Neder* (1971) 16 Cal.App.3d 846, "The essential act in all types of theft is taking. . . . The real essence of the crime of forgery, however, is not concerned with the end . . . ; it has to do with the means, i.e. the act of signing the name of another with intent to defraud and without authority, or of falsely making a document, or of uttering the document with intent to defraud." (*Id.* at pp. 852–853.)  Prescribing a different penalty for forgery than for theft is not inherently absurd because it is the prerogative of the Legislature, or in this case, the voters, to decide degrees of culpability for different crimes.  (See *Hale v. Superior Court* (2014) 225 Cal.App.4th 268, 277 ["A sentencing disparity does not necessarily render a statutory scheme absurd because it is the Legislature's prerogative to affix punishment."].)

Second, the discrepancy between straight misdemeanor status for violations of section 484g involving property valued at $950 or less and wobbler status for violations of section 484f(a) preceded the enactment of Proposition 47.  (§ 484g, as amended by Stats. 2009–2010, 3d Ex. Sess., ch. 28, § 15; §§ 487, 488, 490.)  Thus, construing an access card forgery crime under section 484f(a) to be subject to punishment as a wobbler and use of an access card to obtain property worth $950 or less as a misdemeanor is consistent with prior choices made by the Legislature regarding the appropriate punishments for these crimes.  (See, e.g., *People v. Wilkinson* (2004) 33 Cal.4th 821, 840 [" 'The Legislature is responsible for determining which class of crimes deserves certain punishments and which crimes should be distinguished from others.' "].)  In sum, defendant has not shown interpreting the plain language of section 473(b) to exclude access card forgery will lead to absurd consequences the voters could not have intended.

**B.  *Equal Protection***

Defendant also contends denying her petition to reduce her forgery offenses to misdemeanors under Proposition 47 violates her right to equal protection under the United States and California Constitutions.  Defendant asserts the trial court's narrow interpretation of section 473(b) creates two groups of similarly situated individuals who

are treated differently: (1) those convicted of forgery for use of one of the seven instruments listed in section 473(b), and (2) those convicted of forgery by instruments other than those listed, including access cards.

The Attorney General argues defendant lacks standing to assert a constitutional violation because she failed to prove the value of the instruments used in her forgery offenses.[5] Assuming arguendo defendant has standing to raise her constitutional challenge and the two groups she has identified are similarly situated, we nonetheless reject her claim because we conclude the voter's decision to designate certain forgery crimes as misdemeanors has a rational basis.

"The crux of the constitutional promise of equal protection is that persons similarly situated shall be treated equally by the laws. [Citation.] However, neither clause [of the United States or California Constitutions] prohibits legislative bodies from making classifications; they simply require that laws or other governmental regulations be justified by sufficient reasons." (*In re Evans* (1996) 49 Cal.App.4th 1263, 1270.) Because a criminal defendant " 'does not have a fundamental interest in a specific term of imprisonment or in the designation a particular crime receives,' " the rational basis test applies to an equal protection claim involving " 'an alleged sentencing disparity.' " (*People v. Wilkinson*, *supra*, 33 Cal.4th at p. 838.) Under the rational basis test, the question is whether there is a " ' "rational relationship between the disparity of treatment and some legitimate governmental purpose." ' " (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881.) "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." (*FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 315.)

Defendant contends there is no rational basis for distinguishing between use of the first seven instruments listed in section 473(b) and other forgery crimes because those

---

[5] The Attorney General also asserts defendant forfeited her claim by failing to raise it in the trial court. Defendant's equal protection challenge is cognizable on appeal, however, because it involves a pure question of law that rests on undisputed facts. (*People v. Delacy* (2011) 192 Cal.App.4th 1481, 1483.)

instruments function similarly, if not identically, to others listed under the general forgery statute and victims would suffer the same loss regardless of the instrument employed. Contrary to defendant's argument, there are several reasons the drafters of Proposition 47 and the voters may have decided check forgery was a less serious crime than other types of forgery. First, the seven instruments identified in section 473(b) are negotiable instruments usually printed on paper. Signing another person's name to a check or money order is generally easier than making or altering a name or number on a plastic access card and may reflect a less sophisticated and less culpable crime. As the Attorney General also points out, the use of an access card often transfers the name on the card and card number into the vendor's computer system, potentially affecting the privacy of the consumer. Further, the electronic storage of personal financial information increases the risk such information could be compromised or distributed, particularly in light of data security breaches occurring at businesses and organizations throughout the nation. In addition, as the *Martinez* court noted, "The drafters and electorate could reasonably have determined that fraudulent use of a credit card could result in greater harm than writing a bad check or committing check fraud, since forgery committed with a credit card can result in ongoing financial loss and damage to a victim's credit history, whereas forgery committed with one of the financial instruments listed in section 473[b] will . . . 'generally result in more limited harm to a victim centered around a one-time loss.' " (*Martinez, supra*, 5 Cal.App.5th 234, 244.) For all of these reasons, the electorate could rationally conclude forging a check or similar instrument for $950 or less is not as serious as forging an access card.

Defendant contends the *Martinez* court's analysis is unsound after *Romanowski*, in which the Supreme Court rejected an argument that consumer protection offenses are categorically excluded from misdemeanor reduction under Proposition 47's theft provisions, citing to section 473(b) as evidence of the electorate's intent. (*Romanowski, supra,* 2 Cal.5th at p. 913.) As defendant acknowledges, however, *Romanowski* did not consider whether distinguishing between forgery offenses based on the type of instrument

11

used violates equal protection. Cases are not authority for propositions not considered. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176.)

Moreover, the analysis in *Romanowski* is not inconsistent with our determination here. First, it is notable that in its analysis, the court referenced the specific language of section 473(b) expressly reducing punishment for the seven listed instruments, and characterized the statute by saying "Proposition 47 specifically created a $950 threshold for *check forgery.*" (*Romanowski, supra,* 2 Cal.5th at p. 913, italics added.) Second, while the court observed "a check can contain some of the same information that is found on an access card, along with the owner's address and other details that would facilitate identity theft" (*ibid.*), it did not consider whether concerns about the electronic use and storage of access card information, consumer privacy, and the arguably *greater* potential for identity theft in access card transactions would be a rational basis for the voters to conclude access card forgery crimes are more serious than check-related forgery crimes.

*Romanowski* also did not discuss section 473(b)'s provision that misdemeanor designation is inapplicable to check forgery when a defendant is also convicted of identity theft under section 530.5. (§ 473, subd. (b).) The exception for check forgery offenses involving identity theft convictions suggests the initiative's drafters and voters may have had consumer protection in mind when considering whether particular forgery crimes should be designated wobblers or straight misdemeanors. The fact they chose not to apply Proposition 47 to check forgery offenses that are also found to involve identity theft suggests they may have considered check forgery generally less likely to involve identity theft than other types of forgery offenses.

It is well settled that the Legislature "is afforded considerable latitude in defining and setting the consequences of criminal offenses." (*Johnson v. Department of Justice, supra,* 60 Cal.4th at p. 887.) "If a plausible basis exists for the [statutory] disparity, courts may not second-guess its ' "wisdom, fairness, or logic." ' " (*Id.* at p. 881.) Considering this broad discretion and the plausible basis for a distinction between forgeries involving the seven negotiable instruments listed in section 473(b) and access

12

card forgery, we conclude defendant has not shown a violation of her right to equal protection.

## III.  DISPOSITION

The judgment is affirmed.[6]

_____
Margulies, Acting P.J.

We concur:

_____
Dondero, J.

_____
Banke, J.

---

[6] The Attorney General asks us to strike the portion of the trial court's order granting defendant's resentencing petition as to count 2 (petty theft).  The Attorney General argues because count 2 was already charged and pled to as a misdemeanor, it is not eligible for reduction to a misdemeanor under Proposition 47—nor did defendant seek relief as to count 2 in her resentencing petition.  Defendant agrees.  As defendant notes, however, the court's order is without legal or practical effect, so we find it unnecessary to strike any portion of the order.

13

Trial Court:   Marin County Superior Court

Trial Judge:   Hon. Terrence R. Boren

Counsel:

Lauren E. Dodge, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Jeffrey M. Laurence, Assistant Attorneys General, Seth K. Schalit and Victoria Ratnikova, Deputy Attorneys General for Plaintiff and Respondent.