[No. B259153. Second Dist., Div. Five. Jan. 15, 2016.]

THE PEOPLE, Plaintiff and Respondent, v.
SAMUEL BUTLER, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, parts I., II., III.F. and IV. of this opinion are certified for publication.

**COUNSEL**

Hart J. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey, Mary Sanchez and Zee Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**TURNER, P. J.—**

## I. INTRODUCTION

A jury convicted defendant, Samuel Butler, of misdemeanor false imprisonment (Pen. Code, § 236)[1] and felony resisting an executive officer (§ 69). Defendant was sentenced to concurrent terms totaling two years in the county jail. Prior to the amendments resulting from the Criminal Justice Realignment Act of 2011, former section 1202.45 required imposition and stay of a parole revocation restitution fine on defendants sentenced to prison. As we shall explain, section 1202.45 has since been amended to provide for parole, postrelease community supervision or mandatory supervision revocation restitution fines. (§ 1202.45, subds. (a)–(b).) The trial court imposed what is characterized in the record as a section 1202.45 revocation fine. In the published portion of the opinion, we conclude no type of section 1202.45, subdivisions (a) and (b) revocation restitution fine could have been imposed. We modify the judgment and affirm it as modified.

## II. THE EVIDENCE

On April 13, 2014, defendant was arrested following a fight with his wife, Milagros Vasquez. Ms. Vasquez, a reluctant witness, testified as follows. Defendant was not living with Ms. Vasquez at that time of the fight. But defendant came to Ms. Vasquez's apartment that evening at her request. Ms. Vasquez's three children—ages four, six and nine—were present. Defendant is the biological father of the younger two children.

Defendant and Ms. Vasquez had an argument in the hallway. Ms. Vasquez was angry and yelling. She went into the bedroom and began throwing defendant's belongings around. Defendant told her, "Don't go crazy." They began hugging and kissing, but then Ms. Vasquez slapped defendant in the face. Defendant restrained her hands so she could not slap him again. Defendant was lying on top of Ms. Vasquez on the bed holding her hands so she could not hit him when two police officers arrived.

Ms. Vasquez telephoned an emergency operator. Ms. Vasquez said there was no emergency, but requested that the police be sent to her apartment. Ms. Vasquez said defendant had arrived at her apartment in violation of a restraining order. In the telephone call, Ms. Vasquez also said, "[H]e has my son." At one point, the emergency operator asked: "[Y]ou said he has your

---

[1] Further statutory references are to the Penal Code except where otherwise noted.

son. What does that mean?" Ms. Vasquez responded, "Yeah. Yeah," and then said her son's name. At trial, Ms. Vasquez at first denied it was her voice on the recording. Upon further questioning, Ms. Vasquez admitted calling the emergency operator.

Francesca Gonzales lived across the hall from Ms. Vasquez. Ms. Gonzales sometimes babysat Ms. Vasquez's children. On the evening defendant was arrested, Ms. Vasquez's oldest child, "Coco," knocked on Ms. Gonzales's door. Coco asked Ms. Gonzales to help Ms. Vasquez. Ms. Gonzales went into Ms. Vasquez's bedroom. She saw defendant on top of Ms. Vasquez. Defendant was holding Ms. Vasquez down by her waist. Defendant had his arms around Ms. Vasquez's waist. Defendant was saying: "I want to talk to you. Calm down." Ms. Vasquez was trying to get away. She was yelling at defendant to get off her and to let her go. Ms. Vasquez appeared to be angry. As Ms. Gonzales left to call an emergency operator, police officers arrived.

Officer Steve Tallakson and a partner, Officer Deantraye Dantzler, arrived in response to Ms. Vasquez's telephone call. As the officers approached the apartment, Officer Tallakson could hear Ms. Vasquez screaming, "Let me go." Ms. Gonzales told Officer Tallakson: "He's in there. He won't let her go." Coco told Officer Tallakson: "He's hurting my Mommy. He won't let her go."

Officer Tallakson entered the bedroom. Officer Tallakson saw defendant holding Ms. Vasquez, who was on her back, down on the bed. Defendant was lying on his side looking directly at Ms. Vasquez. Officer Tallakson described how hard defendant was squeezing Ms. Vasquez: "He was squeezing her. You could see the veins popping out of his arms. [¶] . . . The muscles were tense. Veins were popping out of the neck. . . ." Defendant had his arms and legs wrapped around Ms. Vasquez in a manner that prevented her from moving. According to Officer Tallakson, Ms. Vasquez was struggling to get away from defendant. Ms. Vasquez pleaded for the officers to help her. She said: "Help me, help me. Let me go." Defendant said multiple times, "Tell them I didn't do anything." Officer Tallakson repeatedly ordered defendant to release Ms. Vasquez. Defendant did not comply. The two officers attempted to pull defendant off Ms. Vasquez.

Officer Tallakson described what happened as the struggle ensued: "He whips his head back to look at me and then throws his left arm up at me. [¶] . . . He has closed fist—closed his fist, swung his arm up in my chest and head area because I was bending over." Officer Tallakson radioed for backup. Defendant grabbed the microphone from Officer Tallakson. The struggle continued as the officers attempted to restrain defendant and Ms. Vasquez tried to get free. Defendant grabbed Officer Tallakson's radio. Defendant tucked the radio under his waist and lay face down on the bed. As the

struggle ensued, Officer Dantzler placed a second radio call for backup. Defendant then reached up and knocked the radio out of Officer Dantzler's hand. Eventually, with the help of two additional officers, Officers Tallakson and Dantzler gained control of defendant.

Officer Tallakson spoke with Ms. Vasquez later that evening. She was distraught, crying and complaining of pain. She said defendant had held her down and would not let her go. Officer Tallakson did not see any injuries on Ms. Vasquez.

On April 2, 2014, 11 days prior to the present incident, Officer Alan Coleman and a partner were present near Ms. Vasquez's apartment building. Officer Coleman saw defendant on top of Ms. Vasquez. The two were struggling. Ms. Vasquez was calling for help. Defendant was on top of Ms. Vasquez on the sidewalk straddling her upper body. Defendant's arms were on top of Ms. Vasquez's arms. As Officer Coleman exited his police car, Ms. Vasquez broke free and ran toward him. Ms. Vasquez appeared to be injured. Ms. Vasquez told Officer Coleman: she had a physical fight with defendant inside her apartment; defendant was angry and grabbed at her neck; she broke free and ran outside; and defendant chased her and tackled her to the ground.

## III. DISCUSSION[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### A.–E.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### F. No Revocation Restitution Fine Could Be Imposed

Defendant committed his misdemeanor and felony violations on April 13, 2014, and was sentenced on September 4, 2014. Defendant was sentenced to county jail for two years. As to count 1, defendant received a six-month concurrent county jail sentence for misdemeanor false imprisonment. As to count 2, he was sentenced to the middle term of two years on the felony section 69 resisting an executive officer charge. No part of the felony sentence was suspended as permitted by section 1170, subdivision (h)(5)(B).

The trial court orally imposed a $300 section 1202.4, subdivision (b)(1) restitution fine. The trial court also orally imposed and stayed a $300 section

---

[*]See footnote, *ante*, page 1346.

1202.45 revocation restitution fine. We conclude no section 1202.45 revocation restitution fine could be imposed.

There are two relevant provisions in section 1202.45. Section 1202.45, subdivision (a), which permits the imposition and stay of a parole revocation restitution fine states, "In every case where a person is convicted of a crime and his or her sentence includes a period of parole, the court shall, at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4." No parole revocation restitution fine can be imposed and stayed in this case. Defendant was not sentenced to prison and, as a matter of law, is not subject to a period of parole supervision. (*People v. Armogeda* (2015) 233 Cal.App.4th 428, 434 [182 Cal.Rptr.3d 606]; *People v. Jones* (2014) 231 Cal.App.4th 1257, 1266 [180 Cal.Rptr.3d 407]; *People v. Cruz* (2012) 207 Cal.App.4th 664, 671–672 [143 Cal.Rptr.3d 742].) Because he was sentenced to county jail, the Department of Corrections and Rehabilitation has no jurisdiction over defendant. (*People v. Espinoza* (2014) 226 Cal.App.4th 635, 639 [172 Cal.Rptr.3d 77].) Section 1202.45, subdivision (a) does not apply to this case.

■ The second relevant provision is section 1202.45, subdivision (b) which states in part, "In every case where a person is convicted of a crime and is subject to either postrelease community supervision under Section 3451 or mandatory supervision under subparagraph (B) of paragraph (5) of subdivision (h) of Section 1170, the court shall, at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional postrelease community supervision revocation restitution fine or mandatory supervision revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4 . . . ." Section 1202.45, subdivision (b) identifies two revocation restitution fines that may be imposed. To begin with, an accused who is subject to section 3451 postrelease community supervision may be subject to a revocation restitution fine. However, section 3451, subdivision (a), by its very terms, relates only to inmates released from prison.[2] (See *People v. Cruz, supra,* 207 Cal.App.4th at

---

[2] Section 3451, subdivision (a) states, "Notwithstanding any other law and except for persons serving a prison term for any crime described in subdivision (b), *all persons released from prison on and after October 1, 2011, or, whose sentence has been deemed served pursuant to Section 2900.5 after serving a prison term for a felony shall, upon release from prison* and for a period not exceeding three years immediately following release, be subject to community supervision provided by the probation department of the county to which the person is being released, which is consistent with evidence-based practices, including, but not limited to, supervision policies, procedures, programs, and practices demonstrated by scientific research to reduce recidivism among individuals under postrelease supervision." (Italics added.)

pp. 672–673, fn. 8.) As defendant was sentenced to county jail and not prison, the trial court could not impose a postrelease community supervision revocation restitution fine.

Section 1170, subdivision (h)(5) specifies how a trial court is to proceed when a county jail sentence is imposed and a period of mandatory supervision is imposed: "(A) Unless the court finds, in the interest of justice, that it is not appropriate in a particular case, the court, when imposing a sentence pursuant to paragraph (1) or (2), shall suspend execution of a concluding portion of the term for a period selected at the court's discretion." If the trial court suspends a portion of the term it selected (in this case two years for the resisting an executive officer charge), then the following is to occur: "(B) The portion of a defendant's sentenced term that is suspended pursuant to this paragraph shall be known as mandatory supervision, and, unless otherwise ordered by the court, shall commence upon release from physical custody or an alternative custody program, whichever is later. During the period of mandatory supervision, the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court. The period of supervision shall be mandatory, and may not be earlier terminated except by court order." (§ 1170, subd. (h)(5)(B).)

Hence, when a portion of the term is suspended, a period of mandatory supervision ensues unless the trial court orders otherwise because the interests of justice so dictate. This is referred to as a blended, hybrid or split sentence and it consists of a county jail term followed by a period of mandatory supervision. (*People v. Camp* (2015) 233 Cal.App.4th 461, 467 [182 Cal.Rptr.3d 628] [hybrid or split sentence]; *People v. Catalan* (2014) 228 Cal.App.4th 173, 178 [175 Cal.Rptr.3d 41] [hybrid or split sentence]; *People v. Prescott* (2013) 213 Cal.App.4th 1473, 1478, fn. 2 [153 Cal.Rptr.3d 424] [split or blended sentence]; *People v. Cruz, supra,* 207 Cal.App.4th at pp. 671–672 [hybrid sentence].) Here, the trial court never suspended any portion of the two-year county jail term and no period of mandatory supervision was imposed upon defendant. Accordingly, no mandatory supervision revocation restitution fine could be imposed. Section 1202.45, subdivision (b) only permits imposition of a revocation restitution fine when there is a term of postrelease community or mandatory supervision; neither of which occurred in our case. Thus, the order imposing a section 1202.45 revocation restitution fine is reversed. Once the remittitur issues, the abstract of judgment is to be corrected to remove any reference to the revocation fine.

## IV.  DISPOSITION

The judgment is modified to delete any reference to a revocation restitution fine of any kind (Pen. Code, § 1202.45, subds. (a)–(b)). The judgment is affirmed in all other respects. Upon remittitur issuance, the clerk of the superior court is to amend the abstract of judgment to reflect no revocation restitution fine of any type has been imposed.

Kriegler, J., and Baker, J., concurred.