Filed 7/11/16

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E064355 |
| v. | (Super.Ct.No. RIF1314012) |
| JAMES CARL MUTTER, | OPINION |
|     Defendant and Appellant. | |


APPEAL from the Superior Court of Riverside County. Becky Dugan, Judge. Reversed.

Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Scott C. Taylor and Daniel Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

The trial court denied the Proposition 47 petition for resentencing of defendant and appellant James Carl Mutter. (Pen. Code, § 1170.18.)[1] Defendant contends the trial court erred because the crime for which he sought resentencing—possession or receipt of counterfeit currency (§ 475, subd. (a))—is a misdemeanor after the passage of Proposition 47. The denial of the petition is reversed.

## FACTUAL AND PROCEDURAL HISTORY

Defendant was charged with two offenses, both alleged to have occurred on or about November 30, 2013: (1) forgery, in that defendant willfully and unlawfully possessed or received a counterfeit item with the intent to pass the item, knowing it to be counterfeit (Pen. Code, § 475, subd. (a)); and (2) possession of heroin (Health & Saf. Code, § 1350, subd. (a)). The information did not identify the counterfeit item or its value. Two prison priors were also alleged against defendant. (Pen. Code, § 667.5, subd. (b).)

On January 16, 2015, defendant pled guilty to the forgery count (§ 475, subd. (a)). The trial court imposed a 16-month sentence, with four months to be served at the county jail and 12 months of mandatory supervision. At the plea hearing defendant admitted he had "some counterfeit bills and tried to pass them." The amount of the counterfeit bills was not given at the hearing. Defendant's plea form reflects the item was counterfeit bills, but does not include the amount of the counterfeit bills.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

On April 6, 2015, the Riverside County Probation Department moved the trial court to transfer defendant's mandatory supervision to Orange County because defendant was residing in Orange County. The motion to transfer probation was combined with a Proposition 47 hearing. Defendant did not file a Proposition 47 petition, but did file a Memorandum of Points and Authorities explaining why possession or receipt of counterfeit bills is now a misdemeanor under Proposition 47. Presumably, defendant did not file a Proposition 47 petition because there was a suggestion that defendant's probation might not need to be transferred because defendant could qualify for Proposition 47 relief, thus freeing him from mandatory supervision.

In defendant's Points and Authorities, he argued Proposition 47 altered section 473, which sets forth the punishment for a variety of forgery offenses, including section 475, subdivision (a), which is the offense for which defendant was convicted. Defendant argued that although Proposition 47 did not directly alter section 475, subdivision (a), it altered the relevant punishment statute (§ 473) by reducing forgery related to a "bank bill" to a misdemeanor. Defendant asserted currency (§ 475, subd. (a)) qualified as a "bank bill" (§ 473, subd. (b)), and therefore, his conviction should be reduced to a misdemeanor.

The People responded that defendant did not qualify for Proposition 47 relief because (1) section 475, subdivision (a), was not a qualifying crime, i.e., it had not been altered by Proposition 47, and (2) defendant possessed six counterfeit $100 bills.

On July 31, 2015, the trial court held the combined hearing. At the hearing, the prosecutor asserted defendant possessed seven $100 bills. The court questioned why Proposition 47 would apply to section 475, subdivision (a) (defendant's crime) when that statute was not specifically listed in Proposition 47. Defense counsel asserted that was a technicality and the electorate intended to alter all forgery statutes via alteration of the forgery punishment statute (§ 473).

The trial court explained that it did not think "bank note" in the punishment statute (§ 473) included currency. The court said, "I think they would have easily said 'currency,' if they meant to include that, and I don't honestly know what they meant by bank note, but I don't think they meant cash. I think they meant a bank document that could be forged which had a dollar amount, like a check. [¶] So I'm going to find he's not eligible for relief because he had hundred-dollar bank notes, which were in fact translated to cash. He had cash, which although they say bank note on them, I don't think the bank note in [Proposition 47] is cash. Maybe it is. But I'm going to find him not eligible."

**DISCUSSION**

A.    <u>CONTENTION</u>

Defendant contends the trial court erred by concluding currency does not fall within the definition of a "bank bill."

B.    <u>LAW</u>

No evidence was submitted at the trial court, so we will apply the de novo standard of review. (*People v. Sherow* (2015) 239 Cal.App.4th 875, 878.)

Interpretation of statutes and voter initiatives requires application of the same principles. "'"[W]e turn first to the language of the statute, giving the words their ordinary meaning." [Citation.] The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme . . . ."'" (*People v. Briceno* (2004) 34 Cal.4th 451, 459.)

Section 1170.18, subdivision (a), provides, "A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with . . . Section . . . 473 . . . of the Penal Code, as those sections have been amended or added by this act."

Defendant was convicted of violating section 475, subdivision (a), which provides, "Every person who possesses or receives, with the intent to pass or facilitate the passage or utterance of any forged, altered, or counterfeit items, or completed items contained in subdivision (d) of Section 470 with intent to defraud, knowing the same to be forged, altered, or counterfeit, is guilty of forgery."

Section 470, subdivision (d), includes a lengthy list of items. A partial list of the enumerated items is: "any check, bond, bank bill, or note, cashier's check, traveler's check, money order . . . ."

The punishment for violating section 475, subdivision (a), is provided in section 473. Prior to the passage of Proposition 47 (§ 1170.18), section 473 reflected the crime

5

of forgery was a wobbler. After the passage of Proposition 47, section 473 has been separated into two subdivisions. Subdivision (a) still reflects the crime of forgery is a wobbler. However, subdivision (b) reflects "any person who is guilty of forgery relating to a check, bond, bank bill, note, cashier's check, traveler's check, or money order, where the value . . . does not exceed nine hundred fifty dollars ($950)" is guilty of a misdemeanor.

C.    ANALYSIS OF THE LAW

We begin with the language of section 475, subdivision (a), in particular the portion prohibiting "any forged, altered, or counterfeit items, or completed items contained in subdivision (d) of Section 470." The first portion, "any forged, altered, or counterfeit items" is one category set apart by the word "any," which means no particular limit is placed on the type of forged, altered, or counterfeit items.

The second portion, "completed items contained in subdivision (d) of Section 470," in its plain meaning, is limited to completed items listed in section 470, subdivision (d). Section 470, subdivision (d), provides in relevant part, "Every person who, with the intent to defraud, falsely makes, alters, forges, or counterfeits, utters, publishes, passes or attempts or offers to pass, as true and genuine, any of the following items, knowing the same to be false, altered, forged, or counterfeited, is guilty of forgery: any check, bond, bank bill, or note, cashier's check, traveler's check, money order, post note, draft . . . ."

This second portion, by its plain language, refers to forged or counterfeit items (language from section 470, subdivision (d)) that require completion (language from

6

section 475, subdivision (a)).  For example, a forged check that is incomplete because a monetary amount has not been written on it would not qualify under section 475, subdivision (a), because the check is not complete.

Defendant asserts his counterfeit currency is a "bank bill" or "note" as set forth in section 470, subdivision (d).  This reading of section 475, subdivision (a), does not comport with the statute's plain language.  Counterfeit currency is not the type of item that needs completion, in the way a counterfeit check needs completion.  For example, a check needs the user to complete the date, signature, payee, and monetary amount.  So the question becomes, what is a "bank bill" and/or "bank note"?

"Bank bill" and "bank note" are synonymous terms that are "derived from the expression 'bill of credit' as used in early banking history." (*People v. Bedilion* (1962) 206 Cal.App.2d 262, 269.)  "A bank bill or a bank note may be defined as a written promise on the part of the bank to pay to the bearer a certain sum of money, on demand; an obligation for the payment of money on demand, passing from hand to hand as money." (*Ibid.*)  In modern times, private banks are generally prohibited from issuing such bank notes or bills.  "'[B]ills,' our paper currency, are issued only by the Federal Reserve banks." (*Ibid.*)  Thus there are two possible meanings for "bank bill":  (1) the historic meaning, which is a written promise on the part of the bank to pay the bearer a certain sum of money; and (2) the modern meaning, which is our paper currency.  (*Ibid.*; *People v. Ray* (1996) 42 Cal.App.4th 1718 ["bills" means paper currency].)

These two meanings are reflected in the Penal Code.  First, the historic meaning is reflected in section 475, subdivision (a), which refers to a "completed" bank bill.  The

7

concept of a partially unfinished bank bill lends itself to the historic definition because it is closer in nature to a check, i.e., a written promise to pay. A check can be unfinished, for example missing a payee, date, amount, or signature. A written promise to pay could also be unfinished because it is missing necessary information. Currency on the other hand would tend to be complete upon printing and thus would not logically fall into a category that requires the items to be completed.

Second, the modern meaning is reflected in section 480, subdivision (a), which provides, "Every person who makes, or knowingly has in his possession any die, plate, or any apparatus, paper, metal, machine, or other thing whatever, made use of in counterfeiting coin current in this state, or in counterfeiting gold dust, gold or silver bars, bullion, lumps, pieces, or nuggets, or in counterfeiting bank notes or bills, is punishable by imprisonment . . . ." (*People v. Ray*, *supra*, 42 Cal.App.4th at p. 1721.) The "bank notes or bills" in section 480, subdivision (a), has been interpreted as referring to paper currency. (*Ray*, at p. 1722.) In the context of section 480, subdivision (a), it is reasonable to interpret the statute as referring to currency because "coin" and written promises to pay (the historic definition) do not provide compatible results, whereas "coin" and "currency" (the modern definition) are compatible.

In sum, we have two meanings for the term "bank bill," the historic definition and the modern definition. Section 473, subdivision (b), provides, "[A]ny person who is guilty of forgery relating to a check, bond, bank bill, note, cashier's check, traveler's check, or money order, where the value of the check, bond, bank bill, note, cashier's

8

check, traveler's check, or money order does not exceed nine hundred fifty dollars ($950)" is guilty of a misdemeanor.

The question is whether "bank bill" as used in section 473, subdivision (b), refers to the historic or modern definition of the term. Under the lenity rule, "a court must generally interpret an ambiguous criminal statute in the defendant's favor." (*People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1330, fn. omitted.) Therefore, as required by the lenity rule, we conclude "bank bill" refers to the modern definition, i.e., currency.

D.     ANALYSIS OF THE CURRENT CASE

In the instant case, defendant was convicted of possessing or receiving counterfeit currency with the intent to pass the currency, knowing it to be counterfeit (§ 475, subd. (a).) Defendant's conviction would have fallen under the first category of section 475, subdivision (a), which prohibits possession or receipt of "any forged, altered, or counterfeit items." Because the "item" was currency, the offense is now a misdemeanor under section 473, subdivision (b), when the modern definition of "bank bill" is employed. Accordingly, defendant's offense could be a misdemeanor if the amount of the counterfeit currency was $950 or less.

There was no evidence provided at the trial court that the amount of counterfeit currency was less than $950. (See *People v. Sherow*, *supra*, 239 Cal.App.4th at p. 880 ["A proper petition could certainly contain at least [defendant's] testimony about the nature of the items taken"].) However, the prosecutor argued the value was, at most, $700. Because the prosecutor affirmatively agreed the value of the counterfeit bills was less than $950, thus reflecting there was no issue as to value in the trial court, we will

9

find the value element has been satisfied. (*People v. Peters* (1950) 96 Cal.App.2d 671, 677-678 [a finding of fact can be based upon a concession].) Accordingly, defendant's offense qualifies as a misdemeanor because he possessed counterfeit currency in an amount less than $950.

### E.   DATE OF CONVICTION

We asked the parties to provide supplemental briefing on the issue of whether defendant could apply for Proposition 47 relief when he was convicted and sentenced after the effective date of section 1170.18.

Our concern was as follows: Section 1170.18 became effective on November 5, 2014. (Prop. 47, § 14, as approved by voters, Gen. Elec. (Nov. 4, 2014, eff. Nov. 5, 2014).) On January 16, 2015, defendant pled guilty to forgery. (§ 475, subd. (a).) Defendant was also sentenced on January 16, 2015. A statutory amendment lessening punishment is presumed to apply in all cases not yet reduced to final judgment as of the amendment's effective date. (*People v. Floyd* (2003) 31 Cal.4th 179, 184.) Therefore, arguably, the newly revised laws should have been applied at defendant's hearing on January 16, 2015, and if they were not applied, he had an appealable issue (see § 1237.5 [appeal from guilty plea]).

Section 1170.18, subdivision (a), provides, "A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect *at the time of the offense* may petition for a recall of sentence . . . ." (Italics added.) Defendant's offense was committed on November 30, 2013—

10

prior to the effective date of the act.  Accordingly, even though defendant was convicted and sentenced after the effective date of the act, because the act was not in effect at the time of his offense, he may properly file a petition for recall of his sentence.

## DISPOSITION

The denial of defendant's petition is reversed.  If defendant is still serving his sentence, then the trial court shall resentence defendant to a misdemeanor under § 473, unless the court in its discretion determines resentencing defendant would pose an unreasonable risk of danger to public safety.  (§ 1170.18, subd. (b).)  If defendant has already completed serving his sentence, then the trial court is directed to reduce defendant's felony conviction (§ 475, subd. (a)) to a misdemeanor.  (§ 1170.18, subd. (f).)

CERTIFIED FOR PUBLICATION

MILLER _____
                                                                                          J.


We concur:


HOLLENHORST _____
                    Acting P. J.


SLOUGH _____
                    J.

11