Filed 3/16/18

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BEATRICE AGUIRRE,<br><br>    Defendant and Appellant. | A148959<br><br>(Solano County<br>Super. Ct. No. FCR315762) |

## I. INTRODUCTION

Defendant Beatrice Aguirre was detained by store security personnel after attempting to pay for purchases with a suspected counterfeit $100 bill. She was placed under arrest by a responding police officer, who, on conducting a search of defendant's purse incident to her arrest, found $1,130 in counterfeit $100, $20 and $5 bills, as well as 40 "washed out" $1 bills the officer believed were on their way to becoming counterfeit $100 bills. Defendant was charged with several felonies, including one count of forgery in violation of Penal Code section 476. She subsequently pleaded no contest to the forgery charge. The following year, defendant sought to recall her sentence under Proposition 47 (Cal. Const., art. II, § 10, subd. (a); Pen. Code, § 1170.18) for resentencing as a misdemeanor. The trial court denied her petition on the ground the value of the counterfeit currency exceeded $950.

Defendant's principal argument on appeal is that the trial court erred in totaling the value of the counterfeit currency she possessed and should have, instead, followed cases holding the face amounts of forged checks cannot be aggregated for purposes of Proposition 47. We conclude the forged check cases are inapplicable and the total

_____

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III.B and III.C.

1

amount of counterfeit currency possessed by a defendant at a given time properly determines whether the crime of possessing counterfeit currency remains a "wobbler" or must be charged and sentenced as a misdemeanor. Indeed, as we explain, were that not the case, there could never be a felony conviction for possession of counterfeit currency, even for a suitcase of bogus bills, because the largest denomination the United States Federal Reserve prints in paper currency is $100. We discern no intent on the part of the proponents of Proposition 47 or the electorate to entirely eliminate felony convictions for possession of counterfeit currency. We therefore affirm the denial of defendant's petition for resentencing. We also affirm the trial court's refusal to split her sentence between mandatory supervision and county jail, but agree the court erred in imposing a parole revocation restitution fee.

## II. BACKGROUND

In the summer of 2015, police officers responded to a report of someone trying to make a purchase using counterfeit currency. When officers arrived on the scene, defendant told them she was unaware the $100 bill she had tried to use was counterfeit. However, the store clerk alerted the officers that defendant had several other $100 bills in her purse. Defendant, who was on probation at the time, refused to allow the officers to search her purse, and they subsequently arrested her. Defendant then admitted she possessed both drugs and additional counterfeit bills, and upon conducting a search of her purse, the officers found an additional $1,130 in counterfeit $5, $20 and $100 bills, as well as 40 "washed out" $1 bills the officers believed were in the "stage of production" of becoming counterfeit $100 bills, along with 4.19 grams of methamphetamine and a glass pipe.

Defendant was charged with felony forgery (Pen. Code, § 476[1]—count 1), one count of misdemeanor possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)—count 2) and one count of second degree commercial burglary (§ 459—count

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

3).  It was further alleged as to count 1 that defendant had served two prior prison terms. (§ 667.5, subd. (b).)

Defendant eventually pleaded no contest to felony forgery (§ 476).[2]  The district attorney agreed to dismiss the remaining counts and priors, and that defendant would be allowed to withdraw her plea if she was found ineligible for probation.  When defendant failed to appear for sentencing, the trial court issued a bench warrant, and she was subsequently apprehended.

Defendant's criminal history dated back to 1984, and she had never successfully completed a grant of probation.  The probation department initially recommended a split sentence, i.e., defendant would serve one year of a three-year sentence in county jail and the rest on mandatory supervision.  However, probation thereafter reported defendant had sustained two new criminal arrests, both for forgery offenses.  In light of defendant's failure to appear for sentencing and her subsequent criminal conduct the probation department dropped its split sentence recommendation, as it "no longer appears appropriate."  Instead, the department recommended denial of probation and "imposition of the full incarceration period of three years."

The trial court imposed a lesser sentence than that recommended by probation— the midterm of two years, as well as various fees, including a $300 section 1202.45 parole revocation restitution fee.  The trial court stated "It's apparent to me from [defendant's] behavior as well as while she was pending judgment and sentence that she is not a good candidate for probation.  [¶] For those same reasons I'm providing—a split sentence would not be appropriate in this case because of the time chasing her down and trying to offer her services, she has received a ton of services.  [¶] At this point in time, the ultimate service provider would be the jail which has more programs in it including

---

[2]  Section 476 provides:  "Every person who makes, passes, utters, or publishes, with intent to defraud any other person, or who, with the like intent, attempts to pass, utter, or publish, or who has in his or her possession, with like intent to utter, pass, or publish, any fictitious or altered bill, note, or check, purporting to be the bill, note, or check, or other instrument in writing for the payment of money or property of any real or fictitious financial institution as defined in Section 186.9 is guilty of forgery."

3

the WRAP program and the Anka program. I hope [defendant] avails herself of the opportunity. . . ."

Defendant subsequently filed a petition for resentencing pursuant to Proposition 47, which the trial court denied "based upon the number of counterfeit bills she was in possession [of] at the time" of the offense.

### III.    DISCUSSION

#### A. *Proposition 47*

In November 2014, the California electorate passed Proposition 47, the Safe Neighborhoods and Schools Act. (*People v. Page* (2017) 3 Cal.5th 1175, 1179.) This measure "downgraded several crimes from felonies to misdemeanors," one of its purposes being "to reduce the number of prisoners serving sentences for nonviolent crimes, both to save money and to shift prison spending toward more serious offenses." (*People v. Romanowski* (2017) 2 Cal.5th 903, 907.)

"Prior to Proposition 47, all forgery offenses were 'wobblers,' meaning they could be charged and punished either as a felony or a misdemeanor.' " (*People v. Bloomfield* (2017) 13 Cal.App.5th 647, 651 (*Bloomfield*); see § 473, subd. (a).)

Proposition 47 amended section 473, the general forgery sentencing statute, so that it now contains two subdivisions. Subdivision (a) preserves the prior "wobbler" language and states: "Forgery is punishable by imprisonment in a county jail for not more than one year, or by imprisonment pursuant to subdivision (h) of Section 1170." (§ 473, subd. (a).) Subdivision (b) spells out exceptions to this general proviso and states in relevant part: "Notwithstanding subdivision (a), any person who is guilty of forgery relating to a check, bond, bank bill, note, cashier's check, traveler's check, or money order, where the value of the check, bond, bank bill, note, cashier's check, traveler's check, or money order does not exceed nine hundred fifty dollars ($950), shall be punishable by imprisonment in a county jail for not more than one year, except that such person may instead be punished pursuant to subdivision (h) of Section 1170 if that person has one or more prior convictions. . . . This subdivision shall not be applicable to any person who is

4

convicted both of forgery and of identity theft, as defined in Section 530.5." (§ 473, subd. (b).)

In short, while there are numerous forgery offenses (e.g., §§ 470, subds. (a)–(d), 470a, 470b, 471, 472, 474, 475, subds. (a)–(c), 476), Proposition 47 singled out only "seven specific instruments for reduced punishment," and the voters "signaled their intent *not* to include all forgery offenses in Proposition 47." (*Bloomfield*, *supra*, 13 Cal.App.5th at p. 653; see *People v. Martinez* (2016) 5 Cal.App.5th 234, 241–243.)

Since the passage of Proposition 47, three published cases have dealt with issues concerning the possession of counterfeit currency. Two have addressed whether counterfeit paper currency is a "bank bill" for purposes of Proposition 47 and thus among the enumerated instruments now potentially excepted from "wobbler" status. (*People v. Mutter* (2016) 1 Cal.App.5th 429, 434–436 (*Mutter*); *People v. Maynarich* (2016) 248 Cal.App.4th 77, 80–81 (*Maynarich*).) Both answered this question in the affirmative. (*Mutter*, at p. 436 [" 'bank bill' refers to the modern definition, i.e., currency"]; *Maynarich*, at p. 80 ["United States currency, issued by the Federal Reserve Bank, qualifies as a bank bill or note."].) The third case considered whether value can be attributed to counterfeiting materials, such as security strips, Benjamin Franklin faces, and blank money paper, in order to disqualify a defendant from eligibility for resentencing as a misdemeanor. (*People v. Rendon* (2016) 5 Cal.App.5th 422, 424–425 (*Rendon*).) The court answered this question in the negative. (*Id.* at pp. 425–427.)

None of these cases expressly addressed how Proposition 47's $950 benchmark should be determined in a possession of counterfeit currency case. They impliedly did so, however, in concluding this bar was not exceeded and the defendants were eligible for resentencing. In *Mutter,* the defendant admitted at the plea hearing "he had 'some counterfeit bills and tried to pass them.' " (*Mutter*, *supra*, 1 Cal.App.5th at p. 432.) The plea form did not "include the amount of the counterfeit bills." (*Ibid.*) However, at the resentencing hearing, the prosecutor had affirmatively agreed "the value of the counterfeit bills was, at most, $700." (*Id.* at p. 436.) The appellate court thus found "the value element [required for Proposition 47 resentencing] has been satisfied." (*Ibid.*) In

*Maynarich*, it was undisputed probation officers found the defendant in possession of three counterfeit $50 bills. (*Maynarich*, *supra*, 248 Cal.App.4th at p. 79.) Accordingly, there was "no issue as to whether the value of the bank bills he possessed exceeded $950." (*Id.* at p. 81.) In *Rendon*, "the only fictitious or altered bills or notes defendant possessed that had any discernable value were the two $100 bills and the three $20 bills." (*Rendon*, *supra*, 5 Cal.App.5th at p. 426.) The prosecution could not, said the court, point to the counterfeiting materials the defendant also had in her possession to boost the value of the crime over the $950 benchmark. (*Id.* at pp. 426–427.) Thus, the defendant was "correct that the evidence here showed that the value of the altered or fictitious bills she possessed did not exceed $950. (*Id.* at p. 427; cf. *People v. Gonzales* (2016) 6 Cal.App.5th 1067, 1070, 1072 [face values of forged checks underlying multiple counts could not be aggregated with the counterfeit bills totaling only $650 underlying a separate count], review granted on another ground Feb. 15, 2017, S240044.)

*Mutter*, *Maynarich* and *Rendon*, thus imply that, insofar as possession of counterfeit currency is concerned, whether the crime remains a wobbler, or must be charged and sentenced as a misdemeanor, is determined by the total value of the counterfeit currency possessed by the defendant. Indeed, defendant has not directed our attention to a single possession of counterfeit currency case that suggests that whether the offense must be charged and sentenced as a misdemeanor under Proposition 47 turns on the individual denominations of the counterfeit bills, rather than the total value of the bogus currency on which the charge is based.

Moreover, if the $950 benchmark for possession of counterfeit currency is determined by the single highest denomination bill found in a defendant's possession, then Proposition 47 will have effectively eliminated the crime of felony possession of counterfeit currency, as the United States Treasury does not produce paper currency in any denomination higher than $100.[3] Thus, the chances of anyone possessing a

---

[3] We grant the Attorney General's request for judicial notice of the currency denominations produced by the United States Federal Reserve. (Evid. Code, § 452,

6

counterfeit bill with a greater face value are virtually nonexistent, and even if the defendant had a briefcase with $50,000 in counterfeit bills, the possessory crime would have to be charged and sentenced as a misdemeanor. We discern nothing in Proposition 47 or its legislative history (consisting of the materials sent to the voters) that suggests the proponents of the measure and the electorate intended to eliminate felony possession of counterfeit currency and to treat a mule in a big time counterfeiting operation the same as a petty criminal with a few counterfeit bills. (See *Bloomfield*, *supra*, 13 Cal.App.5th at p. 654 ["In each instance where the ballot materials mention forgery offenses, they specifically refer to *check* forgery."].) Such a result would also be at odds with Proposition 47's treatment of those forging checks. A defendant forging a $50,000 check, of course, can be charged with a felony and sentenced accordingly. It makes no sense that a defendant carrying $50,000 in counterfeit currency could be charged only with a misdemeanor because the highest denomination of the bills in his bag was $100. We will not read Proposition 47 in a manner that is at odds with its apparent purposes and leads to an absurd result. (See *People v. Moore* (2004) 118 Cal.App.4th 74, 77, 81.)

Defendant places reliance on several cases dealing with forged checks and holding whether a defendant qualifies for resentencing under Proposition 47 is determined by the face value of each individual check and not their aggregate value. (*People v. Salmorin* (2016) 1 Cal.App.5th 738, 745–754 (*Salmorin*); *People v. Hoffman* (2015) 241 Cal.App.4th 1304, 1310–1311 (*Hoffman*).) In *Salmorin*, the defendant and a cohort came into possession of a number of stolen checks and, when arrested, had five of the checks in their possession—one was still blank, one was made out to an assumed name used by the defendant, two were payable to his cohort, and one was payable to another individual. The prosecutor's theory was that the two had committed the forgeries as a joint criminal enterprise and charged the defendant with one count of forgery under section 470, subdivision (d). (*Salmorin*, at p. 742.) In *Hoffman*, the defendant took a book of checks belonging to her parents and over three months, forged her mother's

---

subds. (c), (h).) The federal government stopped producing paper currency in any denomination over $100 more than 70 years ago.

signature on 18 of the checks.  She eventually pled guilty to seven of the 18 counts of felony forgery under section 470, subdivision (d) based on the checks.  (*Hoffman*, at p. 1307.)  *Salmorin* and *Hoffman*, thus, involved multiple separate acts of forging separate documents, and the defendants in both cases were convicted of violating section 470, subdivision (d).

Here, in contrast, the defendant committed a singular act—possessing $1,130 in counterfeit currency—and was convicted of violating section 476.  Accordingly, much of the discussion in *Salmorin* that " '[n]ormally, separate acts . . . are separate offenses' " (*Salmorin*, *supra*, 1 Cal.App.5th at p. 748–749, quoting *People v. Neder* (1971) 16 Cal.App.3d 846, 851 (*Neder*)) and that the courts have generally followed the " 'rule of one count of forgery per instrument' " because it " 'is in accord with the essence of forgery, which is making or passing a false document' " (*Salmarin*, at p. 749, quoting *People v. Kenefick* (2009) 170 Cal.App.4th 114, 123), does not pertain to the crime at issue here—one act of possessing multiple counterfeit bills.

Indeed, *Neder*, on which *Salmorin* grounds its discussion that multiple acts of forgery are separate crimes, involved forging a credit card holder's signature on three separate sales slips for the purchase of different goods from three different sales clerks.  (*Neder*, *supra*, 16 Cal.App.3d at p. 850.)  The *Neder* court held the defendant was properly convicted of three counts of forgery, rejecting his assertion he could only be convicted of a single count because each of the three acts of forging the card holder's signature was part of a single plan.  (*Id.* at p. 852.)  "The real essence of the crime of forgery," said the court, "has to do with the means, i.e., the act of signing the name of another with intent to defraud and without authority, or of falsely making a document, or of uttering the document with intent to defraud."  (*Id.* at pp. 852–853.)  And for that reason, "designation of a series of forgeries as one forgery would be a confusing fiction."  (*Id.* at p. 853.)

However, the acts *Neder* identified are not the essence of the crime of possessing counterfeit currency.  And designating the possession of multiple counterfeit bills at one time as a single crime is not in any way a "confusing fiction."

8

In fact, defendant has not called to our attention any authority suggesting she could properly have been charged and convicted of as many counts of violating section 476 as she had counterfeit bills in her possession, and the authority appears to be to the contrary. (See *People v. Morelos* (2008) 168 Cal.App.4th 758, 764 [reversing multiple counts of possessing blank forged checks; defendants could be convicted of only one count as to each victim]; *People v. Carter* (1977) 75 Cal.App.3d 865, 868, 870–871 [simultaneous possession of multiple forged checks did not constitute multiple crimes], superseded by statute on another ground as stated in *People v. Todd* (1994) 22 Cal.App.4th 82, 86; *People v. Bowie* (1977) 72 Cal.App.3d 143, 156–157 (*Bowie*) [where the defendant "possessed all 11 [blank] checks at the same time," he "was guilty of only 1 [forgery] violation" for possessing a blank check with the intent to complete and pass it, and distinguishing *Neder* because it was not "based on possession" and involved "three separate forgeries"].)

Given our view that the crime of possessing counterfeit currency at issue here is fundamentally different from the multiple check forging crimes at issue in *Salmorin* and *Hoffman*, we need not and do not address these cases further, and we affirm the trial court's denial of defendant's petition for resentencing under Proposition 47.

### B. Split Sentence

Defendant alternatively contends the trial court abused its discretion in refusing to split her two-year sentence between county jail and mandatory supervision.

Defendant has forfeited this contention by having failed to assert it below. (See *People v. Scott* (1994) 9 Cal.4th 331, 356.)

But even assuming defendant preserved the issue, her assertion is meritless. In the Criminal Justice Realignment Act of 2011, the Legislature "significantly change[d] the punishment for some felony convictions." (*People v. Scott* (2014) 58 Cal.4th 1415, 1418.) Under the Act, "qualified persons convicted of nonserious and nonviolent felonies are sentenced to county jail instead of state prison. [Citation.] Trial courts have discretion to commit the defendant to county jail for a full term in custody, or to impose a hybrid or split sentence consisting of county jail followed by a period of mandatory

9

supervision." (*People v. Catalan* (2014) 228 Cal.App.4th 173, 178; see § 1170, subd. (h)(5)(B).)

Section 1170, subdivision (h)(5)(A) establishes a statutory presumption in favor of imposition of a mandatory supervision period. California Rules of Court, rule 4.415 establishes a nonexhaustive list of criteria the court "may consider" in determining when mandatory supervision is not appropriate in "the interests of justice," which includes: "(1) Consideration of the balance of custody exposure available after imposition of presentence custody credits; (2)The defendant's present status on probation, mandatory supervision, postrelease community supervision, or parole; (3) Specific factors related to the defendant that indicate a lack of need for treatment or supervision upon release from custody; and (4) Whether the nature, seriousness, or circumstances of the case or the defendant's past performance on supervision substantially outweigh the benefits of supervision in promoting public safety and the defendant's successful reentry into the community upon release from custody." (Cal. Rules of Court, rules 4.415(b)(1)–(4), 4.408 ["The listing of factors in these rules for making discretionary sentencing decisions is not exhaustive and does not prohibit a trial judge from using additional criteria reasonably related to the decision being made. Any such additional criteria must be stated on the record by the sentencing judge."].)

Defendant contends the trial court "misapplied the criteria set forth in rule 4.415(b)," and specifically that the court did not weigh the "specific facts about the defendant" against the benefits of mandatory supervision which defendant claims includes "facilitating a defendant's successful reentry into the community."

However, the record reflects otherwise. The court noted defendant's past history of services, her failure on probation, and her recent refusal of residential drug treatment. It further pointed out that "on the other side . . . jail has some wonderful programs," including WRAP and Anka, and that she "hope[d defendant] avails herself of the opportunity." The criteria set forth in California Rules of Court, rule 4.415 are not exhaustive, and the court additionally noted defendant's past behavior on probation and her termination from drug court, her failure to appear for sentencing, and her new arrests.

10

In short, the trial court acted well within its discretion in imposing a full jail term and refusing to split defendant's sentence.[4]

There is also no merit to defendant's claim that her attorney rendered ineffective assistance in failing to urge the court to impose a split sentence, as initially recommended by the Probation Department. To establish a claim of ineffective assistance of counsel, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice. . . . When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) " '[T]he appellate court must look to see if the record contains any explanation for the challenged aspects of representation. If the record sheds no light on why counsel acted or failed to act in the manner challenged, "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation" [citation], the contention must be rejected.' " (*People v. Kelly* (1992) 1 Cal.4th 495, 520.) We will reverse a trial court decision on the grounds of ineffective assistance of counsel " 'only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his [or her] act or omission.' " (*People v. Zapien* (1993) 4 Cal.4th 929, 980.) As defendant is raising the claim of ineffective assistance of counsel on direct appeal and not by way of writ, we must reject the claim unless there simply could be no satisfactory explanation for trial counsel's failure to challenge the probations conditions in question. (*People v. Kelly*, at p. 520.)

While defendant asserts "there could be no satisfactory explanation for [counsel's] failure to object," the record shows otherwise. Defense counsel argued against the probation department's updated recommendation of a three-year, upper term and urged

---

[4] Given our determination that the trial court did not abuse its discretion in refusing to split defendant's sentence, we need not address the Attorney General's assertion of harmless error.

11

the court to impose the lower term stating, "I think everything here points to the low term." When it became clear the court was not going to impose the low term, but was, nevertheless going to show some leniency by imposing the midterm of two years, counsel could have decided that she had obtained as favorable a result as she could. Indeed, the record reflects counsel had no hope of obtaining probation for her client, given the court's statement that "I mean there is not anything more I can do for her on probation. She doesn't want to work it. She didn't do the things she was asked to do. We are done." Thus, there is no merit to defendant's claim of ineffective assistance of counsel.

### C. *Section 1202.45 Fee*

The Attorney General concedes the court erroneously imposed a $300 fine under section 1202.45. We agree and shall order the fee stricken. (See *People v. Butler* (2016) 243 Cal.App.4th 1346, 1350–1352 [striking section 1202.45 fine where "trial court never suspended any portion of the two-year county jail term and no period of mandatory supervision was imposed"].)

## IV. DISPOSITION

The section 1202.45 parole revocation restitution fine is stricken, and the trial court is directed to prepare an amended abstract of judgment reflecting this and to promptly forward the amended abstract to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

 

 

_____
Banke, J.

We concur:


_____
Humes, P.J.


_____
Margulies, J.

A148959, *People v. Aguirre*

13

Trial Court: Solano County Superior Court

Trial Judge:   Hon. Wendy Getty

Counsel:

Xavier Becerra, Attorney General, Gerald A. Engler and Jeffrey M. Laurence, Assistant Attorneys General, Eric D. Share and Huy T. Luong, Deputy Attorneys for Plaintiff and Respondent.

Tiffany J. Gates, under appointment by the Court of Appeal, for Defendant and Appellant.