Filed 1/9/25  P. v. Gorg CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CARTER KENT GORG,<br><br>    Defendant and Appellant. | G063103<br><br>(Super. Ct. No. 22HF1880)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Larry Yellin, Judge.  Reversed in part and affirmed in part as directed.

Rex Adam Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Kristen A. Ramirez and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Defendant Carter Kent Gorg attempted to deposit a fraudulent money order at a bank. He was convicted of two counts of forgery: one under Penal Code section 475, subdivision (a),[1] and the other under section 476. On appeal, he asserts both convictions are different statements of the same offense and involve the same conduct, so one of these convictions must be reversed under section 954. The Attorney General agrees, as do we. Thus, we reverse Gorg's conviction under section 476, because his "conduct . . . appears to be more completely covered" by section 475, subdivision (a). (*People v. Ryan* (2006) 138 Cal.App.4th 360, 371 (*Ryan*).) The remainder of the judgment is affirmed.

FACTS AND PROCEDURAL HISTORY

Gorg entered a bank in Irvine on October 4, 2022, and tried to deposit a $200,000 money order (the money order). The branch manager refused to process the money order due to its irregular appearance. Among other things, the money order stated it was issued by the "Department of the U.S. Treasury," but the United States Department of the Treasury does not issue money orders. The police came and arrested Gorg after he refused to leave the bank.

The prosecution filed an information charging Gorg with three counts arising from the above incident: second degree robbery under sections 459 and 460, subdivision (b) (count one), forgery under section 476 (count two), and forgery under section 475, subdivision (a) (count three). A jury found him guilty on all three counts. In September 2023, Gorg was sentenced

_____

[1] All further undesignated statutory references are to the Penal Code.

to the low term of 16 months for count one, and his sentences for count two and count three were stayed under section 654.[2]

On appeal, Gorg challenges his convictions for count two and count three. First, he argues one of these convictions must be reversed under section 954, because the two counts are different statements of the same offense and arise from the same conduct. Second, he contends there is insufficient evidence to support his conviction on count two. Finally, he argues the court's jury instructions for count two were erroneous. We agree with Gorg's first argument. Thus, as we explain below, we do not need to address his remaining contentions.

DISCUSSION

I.

THE SAME OFFENSE

Gorg contends his conviction for either count two or count three must be reversed under section 954, because both counts are different statements of the same offense and involve the same conduct. The Attorney General agrees, as do we.

Under section 954, "[a] defendant may be charged in an accusatory pleading with 'two or more different offenses connected together in their commission' and 'may be convicted of any number of the offenses charged.' [Citation.] In this regard, '. . . the same act can support multiple charges and multiple convictions.' [Citation.] However, if two alleged offenses are 'different statements of the same offense' [citation], both offenses may be charged based on the same act, but convictions for both cannot stand." (*People v. Aguayo* (2022) 13 Cal.5th 974, 979.) "[S]ection 954 "'does not permit

_____

[2] The minutes from the trial court indicate Gorg had already completed his jail term by the time he was sentenced.

multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct.”'” (*Id*. at p. 982.)

For example, assault with a deadly weapon (§ 245, subd. (a)(1)), and assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4)), are different statements of the same offense—aggravated assault. (*People v. Aguayo*, *supra*, 13 Cal.5th at p. 979.) Thus, “a defendant may not be convicted of both types of aggravated assault based on the same act or course of conduct.” (*Id*. at p. 996.)

Whether two statutes “define different offenses or merely describe different ways of committing the same offense properly turns on the Legislature’s intent in enacting these provisions, and if the Legislature meant to define only one offense, we may not turn it into two.” (*People v. Gonzalez* (2014) 60 Cal.4th 533, 537.) In determining the Legislature’s intent, “we consider the text and structure of the statutes; the elements of the two offenses; their prescribed punishments; and other indicia of legislative intent, including legislative history and the wider historical context of the statutes’ enactment to resolve the question. [Citations.] None of these individual factors is necessarily dispositive.” (*People v. Aguayo*, *supra*, 13 Cal.5th at pp. 982–983.)

Here, count two was based on section 476. It reads, “Every person who makes, passes, utters, or publishes, *with intent to defraud* any other person, or who, with the like intent, attempts to pass, utter, or publish, or who has in his or her possession, with like intent to utter, pass, or publish, any fictitious or altered bill, note, or check, purporting to be the bill, note, or check, or other instrument in writing for the payment of money or property of any real or fictitious financial institution as defined in Section 186.9 *is guilty of forgery*.” (§ 476, italics added.)

4

Count three was based on section 475, subdivision (a), which states, "Every person who possesses or receives, with the intent to pass or facilitate the passage or utterance of any forged, altered, or counterfeit items, or completed items contained in subdivision (d), of Section 470 with *intent to defraud*, knowing the same to be forged, altered, or counterfeit, *is guilty of forgery*." (Italics added.) The items listed in section 470, subdivision (d), include checks, bank bills or notes, cashier's checks, traveler's checks, money orders, requests for payments of money, promissory notes, contracts for money or property, powers of attorney, stock certificates, notary acknowledgments, and bills for the payment of money or property, among other items.

We begin by noting the considerable overlap between sections 475, subdivision (a), and 476. In particular, both state that any person who engages in the relevant proscribed activity "is guilty of forgery." This wording suggests there is a single offense of forgery and sections 475, subdivision (a), and 476 provide different methods of committing it. This reading is supported by the fact that these sections share the same punishment, which is contained in section 473. (*People v. Rendon* (2016) 5 Cal.App.5th 422, 426 [punishment for § 476 is contained in § 473]; *People v. Mutter* (2016) 1 Cal.App.5th 429, 434 [punishment for § 475, subd. (a), is in § 473].)

Further, both sections 475, subdivision (a), and 476, require the same mental state: intent to defraud. And they cover similar types of financial documents—checks, notes, bills, and other instruments for payment of money. While section 475, subdivision (a), is broader than section 476, it appears many financial instruments subject to section 476 would also be subject to section 475, subdivision (a). Thus, there is significant overlap between the two statutes. (See, e.g., *People v. Aguayo, supra*, 13 Cal.5th at

5

pp. 984–985 ["[B]ecause force likely assault includes most assaults with a deadly weapon or instrument, in addition to force likely assaults in the absence of a weapon or instrument, there is significant overlap between the two offenses"].)

We next turn to the legislative history of both statutes. The earliest forgery statutes were passed in the mid-19th century. They were codified in sections 73 through 81 of the Eighth Division of An Act Concerning Crimes and Punishments. (Stats. 1850, ch. 99, §§ 73–81, pp. 237–238; *People v. White* (1867) 34 Cal. 183, 186–187.) Case law interpreting these early statutes shows the crime of forgery has historically been treated as a single offense encompassing several different acts. For instance, in 1865 our Supreme Court explained, "'the falsely making,' 'altering,' 'forging,' 'counterfeiting,' 'uttering,' 'publishing,' 'passing,' 'attempting to pass' any of the instruments or things therein mentioned, with the intent specified, *is declared to be forgery*. Now, each of those acts singly, or all together, if committed with reference to the same instrument, *constitute but one offense*. Whoever is guilty of either one of these acts is guilty of forgery; but if he is guilty of all of them, in reference to the same instrument, he is not therefore guilty of as many forgeries as there are acts, but of one forgery only." (*People v. Frank* (1865) 28 Cal. 507, 513, italics added.)

The crime of forgery was later recodified in the Penal Code in the late 19th century. (See, e.g., *People v. Bibby* (1891) 91 Cal. 470, 473 [former § 470]; *People v. Eppinger* (1894) 105 Cal. 36, 38 [former § 476]; *People v. Chretien* (1902) 137 Cal. 450, 453 [former §§ 470 & 476].) Following this recodification, courts continued to treat forgery as a single offense, which could be committed in a variety of different ways. (See, e.g., *People v.*

6

*McKenna* (1938) 11 Cal.2d 327, 332; *People v. Reisdorff* (1971) 17 Cal.App.3d 675, 678-679; *People v. Neder* (1971) 16 Cal.App.3d 846, 853, fn. 2.)

The current versions of sections 475 and 476 were added to the Penal Code in 1998 by Assembly Bill No. 2008 (AB 2008).[3] AB 2008 was intended to "restructure and simplify code provisions relating to financial crimes and *make no substantive changes*, except to clarify and codify case law that establishes traveler's checks are among the types of instruments that may be forged." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 2008 (1997-1998 Reg. Sess.) as amended April 28, 1998, italics added.) In short, the passage of AB 2008 did not affect the case law described above. As one court has explained, prior to AB 2008, courts had "consistently held that there was but one crime of forgery, and that the various acts proscribed by the statute were simply different means of committing that offense." (*Ryan*, *supra*, 138 Cal.App.4th at p. 366.) This remains true after AB 2008, since "[i]t was not intended to 'change the meaning or legal significance of the law,' but "'merely [to] organize[] the relevant code sections into a cohesive and succinct set of laws that can be readily referred to and understood.'"" (*Ibid.*)

The above factors all weigh in favor of finding that sections 475, subdivision (a), and 476, constitute a single offense. We note at least one treatise has reached the same conclusion: "The single crime of forgery may be committed in many ways. (See Pen. Code, §§ 470 to 476.) Making a fictitious check in violation of Pen. Code, § 476, possessing it in violation of Pen. Code, § 475, and then passing it in violation of Pen. Code, § 470, all constitute

---

[3] Specifically, AB 2008 repealed and replaced sections 470, 475, 476, 484e, 484f, 484g, and 484i, and repealed former section 475a. (Assem. Bill No. 2008 (1997-1998 Reg. Sess.).)

forgery." (Rucker, et al. (4th ed. 2024) Cal. Crim. Practice: Motions, Jury Instr. & Sent., § 70:1.)

In sum, under their express terms, a person that violates either section 475, subdivision (a), or section 476, "is guilty of forgery." (§§ 475, subd. (a) & 476.) These two sections require the same mental state and share the same punishment (§ 473). Finally, state courts have consistently recognized that there is a single crime of forgery, which covers several different acts. Based on these factors, we find sections 475, subdivision (a), and 476 constitute a single offense.

Next, we find that Gorg's convictions for count two and count three are based on the same course of conduct, specifically, his attempt to deposit the money order at the bank. The prosecution admitted as much during trial: "All three of these charges relate to the same conduct. We can just charge things in the alternative certain ways, and that's all this is. There's not three different acts that happened here per se. It's literally the same course of conduct that happened on October 4th, 2022."

Because Gorg's convictions for count two and count three are different statements of the same offense and involve the same conduct, one of them must be reversed. As we explain in the next section, we reverse Gorg's conviction on count two.

## II.

### CONVICTION UNDER SECTION 476

Next, Gorg contends his conviction for count two under section 476 must be reversed. Section 476 states a person is guilty of forgery if he or she passes, with the intent to defraud, "any fictitious or altered bill, note, or check, . . . or other instrument in writing for the payment of money or property of any real or fictitious *financial institution* as defined in Section

8

186.9 . . . ." (Italics added.) Gorg contends there is no evidence the money order was for the payment of money "of any real or fictitious financial institution." (§ 476.) Rather, the money order was purportedly issued by the "Department of the U.S. Treasury," which Gorg claims is a government department, not a financial institution.

We need not evaluate this argument. As set forth above, Gorg could only be convicted of either count two or count three because both counts are different statements of the same offense—forgery—and involve the same conduct. (See *People v. Aguayo, supra*, 13 Cal.5th at p. 979.) They also share the same punishment. (§ 473.) Since Gorg does not dispute his forgery conviction on count three under section 475, subdivision (a), we will reverse his conviction for count two, which is based on section 476.[4] (See, e.g, *Ryan, supra*, 138 Cal.App.4th at p. 371 [vacating duplicate forgery convictions under § 470, subd. (a) because the defendant's conduct appeared "more completely covered by subdivision (d) of section 470"].)

---

[4] Due to this ruling, we need not address Gorg's remaining argument that the jury instructions for count two were improper.

DISPOSITION

Gorg's conviction for count two is reversed. The remainder of the judgment is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


DELANEY, J.


GOODING, J.