Filed 2/24/22  P. v. Bonner CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHARLES EDWARD BONNER,<br><br>Defendant and Appellant. | H048687<br>(Santa Cruz County<br>Super. Ct. No. F07142) |

Charles Edward Bonner appeals the denial of his motion to reduce his felony forgery convictions to misdemeanors pursuant to Penal Code section 17, subdivision (b)[1] (section 17(b)).  Because we conclude that the trial court acted within its discretion in considering evidence that Bonner had engaged in further financial impropriety, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Bonner was convicted in 2004 of two counts of felony forgery pursuant to section 470, subdivision (d), after forging two checks and attempting to deposit them in

---

[1] Undesignated statutory references are to the Penal Code.

his bank account.[2]  He was granted probation for a term of four years, conditions of which included payment of restitution and service of 180 days in jail.

## A.  Bonner's Section 17(b) Motion

In July 2020, Bonner filed a motion with the trial court asking it to exercise its discretion under section 17(b) to reduce the convictions to misdemeanors.[3]  He included letters of support from his daughter-in-law, three friends, and a former employer, attesting to Bonner's "character, transformation and support."  The letters generally spoke to Bonner's compassion, selflessness, work ethic and commitment to helping others and benefitting the community.  Bonner noted that it had been 16 years since his last criminal conviction and that he had made "many positive changes in his life since that time" and was "now a hard-working family man with a history of serving his community and striving to better himself."  In addition to his work as a chef and efforts to start his own catering company, Bonner cited his seven years of employment at the Homeless Service Center in Santa Cruz.

Bonner acknowledged having been charged in 2018 with offenses alleged to have occurred in 2014 and 2015—"theft from an elder adult in violation of Penal Code section 368(d), and two counts of felony grand theft in violation of Penal Code section 487(a)."  But Bonner "maintained his innocence" and noted "the prosecution had dismissed the charges for insufficiency of the evidence."

---

[2] In his opening brief Bonner requests that we take "judicial notice of the record of the proceedings in appellant's underlying case at issue in the motion to reduce, case number F07142."  Because his request did not comply with California Rules of Court, rule 8.252, we are unable to identify why any particular aspect of the proceedings below not included in the appellate record here would be relevant to the issue on appeal; accordingly, we decline the request.  (*People v. Rowland* (1992) 4 Cal.4th 238, 268, fn. 6.)

[3] The motion also sought a sentence reduction for a separate felony conviction as well as expungement of convictions in five cases pursuant to section 1203.4.  We need not address those here, as they are not at issue in this appeal.

## B. Prosecution Evidence in Opposition

In opposition to the section 17(b) motion, the prosecution relied principally on the 2018 allegations, asserting that Bonner had abused his position as a case worker at the Homeless Service Center "to take a significant amount of money from one of his vulnerable clients." The prosecution contended that, "on December 12, 2014, and June 5, 2015, [Bonner] wrote two $15,000 checks to himself, deposited those checks into [his] personal bank account, and spent his client's money on himself."

To substantiate the alleged financial abuse, the prosecution submitted what it characterized as a subset of the documents and records provided to Bonner in discovery: (1) records obtained from three financial institutions—Charles Schwab, Wells Fargo Bank, and Bay Federal Credit Union, (2) Bonner's employment agreement with the Homeless Service Center and his acknowledgment of its policy against gifts from clients; and (3) reports by Detective Eileen Fincutter and Officer Ruben Badeo of the Santa Cruz Police Department, which documented the law enforcement investigation and included interviews with identified witnesses.

The Charles Schwab documents included an application to open an account signed by both Bonner and William M., then a client of Bonner's at the Homeless Service Center. Although the application bore the handwritten initials "WDM" next to a checked box indicating that the account was to be an individual account, a second box—indicating that the account was to be held in joint tenancy with right of survivorship—was likewise checked, though not initialed. The Schwab documents further included two $15,000 bank checks drawn on the jointly titled account—dated December 19, 2014, and June 5, 2015, respectively—both payable to Bonner, both endorsed in his name. Detective Fincutter reported that five other checks drawn on the Schwab account had been made payable to either William M. alone or William M. jointly with Bonner, had been

3

deposited either directly into William M.'s personal account at Bay Federal Credit Union or else cashed, with a corresponding cash deposit in the Bay Federal account.

The Wells Fargo Bank documents consisted of Bonner's personal deposit account statements for November-December 2014 and May-June 2015. They showed a $15,000 deposit on December 19, 2014, and a $15,000 deposit on June 5, 2015. Detective Fincutter reported that these deposits had been followed by corresponding cash withdrawals within the week.

The Bay Federal Credit Union documents consisted of William M.'s personal checking and savings account statements, reflecting his own transaction history and, as is pertinent here, the absence of deposits following Bonner's negotiation of the Schwab checks or his cash withdrawals from his Wells Fargo account. The June 2015 account statement reflected a number of cash withdrawals from William M.'s account following Bonner's post-deposit withdrawals from his Wells Fargo account, but not deposits to William M.'s Bay Federal account until a $7,370 deposit on June 26, 2015.

The Homeless Service Center also provided police with their employment agreement and employee policies, signed by Bonner, which provide that "Employees shall not accept gifts, money, or gratuities for their personal benefit from clients. Items 'gifted' to the agency by clients who do not have a use for those items should be utilized on site to the greater benefit of all."

Detective Fincutter and Officer Badeo documented their interviews with William M., who said that Bonner had withdrawn $30,000 and $15,000 without approval. William M. said that, because he was unable to drive, he and Bonner had an agreement by which Bonner could request checks on William M.'s behalf for deposit in William M.'s bank account. He "was under the impression Bonner could only pick checks up from Charles Schwab and not actually request checks or cash them without his signature." William M. did not appear to the officer to understand that Bonner was in fact a co-owner of the Schwab account. Detective Fincutter described William M. as

4

unfocused and erratic, with apparent mental health issues, including delusional thinking. William M. reported short-term memory loss as a result of recent brain surgery and told Detective Fincutter that he takes an antipsychotic medication.

### C. Hearings on the Motion

The initial hearing on Bonner's motion was continued once for Bonner to review the prosecution evidence and respond to the allegations, again for Bonner to brief his assertion that the court was precluded from considering dismissed charges, and a third time for the prosecution to file with the court the evidence on which the now-dismissed charges had been based. Bonner ultimately did not dispute having become a title owner of a Charles Schwab account funded by William M.'s inheritance or having deposited the two $15,000 checks into his personal Wells Fargo account rather than into William M.'s Bay Federal account. Rather, his counsel maintained that the financial entanglement was of no significance and that the arrangement was "completely known to his employers and everyone else," and was "in order to give [William M.] the money that he needed [to], for example, rent a hotel room, Mr. Bonner would take the money out and then basically give him that cash."

After reviewing the prosecution's evidence, the trial court denied Bonner's section 17(b) motion,[4] finding that "$30,000 of the complaining party's finances had been . . . deposited into Mr. Bonner's account, and I don't believe that Mr. Bonner could account for all that $30,000 . . . being returned to the source[.]" The court reasoned that Bonner "at a minimum breached his employee agreement, and also breached the duty of statutory care that was associated with his position as it relates to the financial transaction he engaged in with the person he was providing services for."

Bonner timely appealed.

---

[4] The trial court granted Bonner's unopposed motion for dismissal of his prior convictions under section 1203.4.

**II. DISCUSSION**

Section 17(b) authorizes a trial court to declare an offense punishable alternatively as a felony or a misdemeanor to be a misdemeanor for all purposes.[5] (*People v. Tran* (2015) 242 Cal.App.4th 877, 885 (*Tran*); *People v. Park* (2013) 56 Cal.4th 782, 789.) Forgery as defined in section 470, subdivision (d), is a "wobbler" subject to section 17. (*People v. Mutter* (2016) 1 Cal.App.5th 429, 434; § 470, subdivision (d).) Unlike statutes that "contain express qualifications delineating, and thereby restricting, the particular exercise of discretion," section 17 sets a "broad generic standard" by which reduction of a wobbler rests "solely 'in the discretion of the court.' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977 (*Alvarez*) [contrasting § 17 with §§ 1385 and 1203].) A reduction under section 17(b) is an act of leniency, not an entitlement. (*Tran, supra* 242 Cal.App.4th at p. 892.) We review the court's denial of section 17(b) relief for abuse of discretion. (*Alvarez*, *supra*, 14 Cal.4th at p. 978.)

Notwithstanding the deferential standard of review, Bonner contends that reversal is required because the court violated "basic fairness principles of due process" in denying his motion, by basing its decision "solely upon information related to a separate case that was dismissed by the prosecution for lack of evidence," when "[t]he evidence related to the dismissed case was both unreliable and irrelevant." Implicit in Bonner's constitutional claim is the premise that he is due the same process in a post-probation motion under section 17(b)(3) as in an original sentencing proceeding, and that the prosecution bears the burden of disproving the entitlement to section 17(b) relief. Neither proposition is self-evident, however.

---

[5] Section 17(b) provides: "When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170, or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: [¶] . . . [¶] (3) When the court grants probation to a defendant and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor." (§ 17, subd. (b)(3).)

We need not resolve these issues, however, because as we shall explain, the record reflects no error in the trial court's consideration of evidence properly before it. (See *People v. Partida* (2005) 37 Cal.4th 428, 437 [no due process violation where no abuse of discretion in evidentiary rulings].)

By the close of the three successive hearings on Bonner's motion, the sole disputed fact of consequence was whether the $30,000 Bonner had transferred from the Schwab account to his Wells Fargo account was in some manner restored to or spent for the benefit of William M., as Bonner's counsel argued.[6] He acknowledged his professional relationship with William M., even claiming that it was his fiduciary duty as case manager for a brain-injured client that necessitated his control over William M.'s money and Schwab account, for William M.'s benefit. There was no dispute as to the following facts reported by police and reflected in the business records: although the funds were William M.'s, the Schwab account was opened as a joint tenancy account with right of survivorship, despite the ambiguity introduced by William M.'s initials designating it an "individual account"; Bonner twice deposited Charles Schwab checks for $15,000 into his personal Wells Fargo account at a time when his account balance was otherwise negligible; although William M. had Bay Federal checking and savings accounts which he regularly used for his expenses, sums corresponding the two Schwab checks were not thereafter deposited into either Bay Federal account.

The trial court was entitled to find the pattern of deposits and withdrawals documented in the bank records to be at least circumstantially incriminating, much like the designation of the Schwab account as a joint tenancy account with right of

---

[6] At an earlier hearing, before the prosecution had provided the documentation to the court, Bonner had expressly denied every aspect of the allegations: "[i]t's all disputed, Your Honor," and "our contention is that none of this happened." Once the People submitted the documentary evidence showing the transfer of funds, however, Bonner neither reiterated his denial nor disputed that evidence, but contended instead that certain of William M.'s contradictory statements to police "completely exonerated" him.

survivorship. Even under the standards applicable to an original sentencing hearing, the trial court was well within its broad discretion to deny Bonner the requested reduction, based on its finding that the prosecution had adequately rebutted Bonner's claim of rehabilitation.

Bonner generically characterizes the totality of the prosecution evidence as irrelevant, but because he does not engage at all with the evidentiary record, we are hard pressed to intuit what aspect of it he believes should have been inconsequential to the trial court's assessment of Bonner's " 'appreciation of and attitude towards the [prior] offense' " (*Alvarez*, *supra*, 14 Cal.4th at p. 978) or his "rehabilitation, and the longevity and duration thereof (*Tran, supra,* 242 Cal.App.4th at p. 892).[7] The evidence that Bonner assumed co-ownership of his brain-injured and mentally ill client's inheritance, then deposited money from that account into one that only he controlled, would seem to be particularly relevant where, as here, the offenses of conviction involved Bonner's attempted deposit of forged checks into his personal bank account with intent to defraud. (§ 470, subd. (d).)

Bonner also disputes the reliability of the prosecution evidence, but here again, his contentions suffer from a lack of particularity. To the extent that Bonner seems to suggest on appeal as in the trial court that the absence of a criminal conviction stemming from his deposit of $30,000 in William M.'s money precludes its consideration, he has cited no authority for such a proposition.[8] Nor could he: even in an original sentencing proceeding, where a defendant has a cognizable liberty interest and the prosecution bears the burden of proving aggravating factors, a court may consider relevant uncharged

[7] An appellant's failure to specify how the evidence below was deficient may be deemed a waiver of the issue. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 (*Stanley*).)

[8] " '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' [Citation.]" (*Stanley*, *supra*, 10 Cal.4th at p. 793.)

8

conduct and acquitted conduct. (See, e.g., *BMW of North America, Inc. v. Gore* (1996) 517 U.S. 559, 573, fn. 19, citing *Williams v. New York* (1949) 337 U.S. 241; *People v. Towne* (2008) 44 Cal.4th 63.)

Throughout his briefing, Bonner appears to deem hearsay categorically unreliable and therefore unfit for consideration. But even assuming it were the prosecution's burden to disprove a petitioner's presumptive entitlement to a section 17(b) reduction, " '[w]hether hearsay evidence is sufficiently reliable to support a sentencing decision depends on the facts of the particular case, and is committed to the sound discretion of the . . . court.' " (*People v. Hall* (2019) 39 Cal.App.5th 831, 839.) The trial court based its decision on reliable primary documentation: the Schwab brokerage account forms, copies of the checks transferring money from the Schwab account into Bonner's Wells Fargo account, the parties' bank account statements, and the Homeless Service Center employee policies. As the trial court stated, "the documentation reflects that $30,000 of the complaining party's [finances] had been inherited checks were deposited into Mr. Bonner's account, and I don't believe that Mr. Bonner could account for all that $30,000 for being returned to the source -- from [William M.'s] account." Even by the third hearing on his motion, despite notice that the reports and bank records would be produced to the court, Bonner provided no evidence—not even a declaration of his own—tending to show that he had in fact returned any of the $30,000 to William M. or William M.'s accounts, or that his arrangement had been approved even tacitly by his employer. (See, e.g., *People v. Lamb* (1999) 76 Cal.App.4th 664, 683 [defendant's advance notice of accusatory letters supported finding of reliability].) At a minimum, the trial court was within its discretion to find the evidence sufficiently reliable to impeach Bonner's representations about his good character and the value to be ascribed to his years of employment with the Homeless Service Center.

The only apparently unreliable out-of-court statements before the trial court were William M.'s various statements to police, which the police themselves flagged as

9

contradictory and of questionable value. There is no indication in the record that the trial court did in fact rely on William M.'s statements for their truth, as opposed to their relevance in establishing his susceptibility to fraudulent exploitation, or to explain the subsequent investigation by the officers. Bonner submits that the silence of the record should inure to his benefit. But on appeal, " ' "[a]ll intendments and presumptions are indulged to support [a judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' " (*People v. Giordano* (2007) 42 Cal.4th 644, 666.)

Bonner likewise makes much of the trial court's early supposition that the Homeless Service Center had disciplined him for the financial impropriety. But Bonner's counsel appropriately clarified that the record did not establish any adverse employment action by the Homeless Service Center, and the trial court thereafter explained that it nonetheless considered reduction unwarranted. The trial court accordingly narrowed its rationale to what it characterized as Bonner's breach of employment policies prohibiting gifts from Homeless Service Center clients and the statutory duty of care. We have no basis to conclude the trial court continued to rely on the cessation of Bonner's employment at the Homeless Service Center as having any marginal probative value.

In his reply brief, Bonner relies heavily on *People v. Banda* (2018) 26 Cal.App.5th 349 to argue that a sentencing court's consideration of hearsay is contingent upon an express determination of its reliability. This mischaracterizes *Banda*, in which the appellate court concluded that an implicit finding of reliability was—given the specifics there omitted as to the sources of the hearsay at issue—an abuse of discretion. (*Id*. at pp. 358-359.) Moreover, *Banda* is inapposite, dealing with a petition for relief pursuant to Health and Safety Code section 11361.8, subdivision (b), which unlike section 17(b) presumes a defendant's eligibility for relief and places the burden on the People to prove—by clear and convincing evidence—that the petitioner did not satisfy the criteria to have his sentence dismissed. (*Banda*, *supra*, at p. 355.)

10

The evidence before the trial court was sufficiently reliable that the trial court did not abuse its discretion in finding that Bonner did not merit discretionary relief. Even assuming that reasonable minds could differ on this ultimate issue, it is not our role as a reviewing court to substitute our judgment for that of the trial judge. (*Alvarez*, *supra*, 14 Cal.4th at p. 978.)

## III. DISPOSITION

The trial court's order denying Bonner's motion is affirmed.

_____

LIE, J.


WE CONCUR:




_____

DANNER, ACTING P.J.




_____

WILSON, J.




***People v. Bonner***
**H048687**